**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Appellate Courts.**

| Instructions ▾ | |
|---|---|
| Keep this cover page white. | ☐ **THIS APPEAL INVOLVES A MATTER SUBJECT TO EXPEDITED DISPOSITION UNDER RULE 311(a).** |

U.S.C.A. 7th Circuit
RECEIVED
OCT 30 2023    1

Appellate Case No.: 23-2969

## IN THE APPELLATE COURT OF ILLINOIS

FIRST ▾ District

**Instructions:**

Check the box to the right if your case involves custody, visitation, or removal of a child.

Enter the Appellate Court case number.

Just below "In the Appellate Court of Illinois," enter the number of the appellate district where the appeal was filed.

If the case name in the trial court began with "In re" (for example, "In re Marriage of Jones"), enter that name. Below that, enter the names of the parties in the trial court, and check the correct boxes to show which party filed the appeal ("appellant") and which party is responding to the appeal ("appellee").

To the far right, enter the trial court county, trial court case number, and trial judge's name.

In re Helen Allen

Helen Dulaine Allen
**Plaintiff/Petitioner** *(First, middle, last names)*
☑ Appellant    ☐ Appellee

v.

Ford Motor Company
**Defendant/Respondent** *(First, middle, last names)*
☐ Appellant    ☑ Appellee

**Appeal from the Circuit Court**
of Cook ▾ County

**Trial Court Case No.:**
1:21 cv 00962

**Honorable**
Mary Rowland

**Judge, Presiding**

## APPELLANT'S BRIEF

**Your Information**

Enter your complete address, telephone number, and email address, if you have one.

| | First | Middle | Last |
|---|---|---|---|
| Name: | Helen | Dulaine | Allen |

| | Street, Apt # | City | State | ZIP |
|---|---|---|---|---|
| Address: | 9530 Pineview Road | Suffolk | Virginia | 23437 |

Phone: (202) 270-2338

Email: wintresssssa@gmail.com

**Oral Argument**

Check "Requested" if you want oral argument OR check "Not Requested" if you do not want oral argument. See *How to File an Appellant's Brief* for a discussion of oral arguments.

☑ Requested    ☐ Not Requested

UNITED STATES COURT OF APPEALS

FOR THE FIRST DISTRICT

Case No. 21-cv-962

HELEN ALLEN,

PLAINTIFF-APPELLANT,

-v-

FORD MOTOR COMPANY,

DEFENDANT-RESPONDENT

Appeal from the United States District Court

For The Northern District of Illinois, the Eastern Division

# APPELLANT'S BRIEF

Helen Allen
9530 Pineview Road
Suffolk, Virginia 23437
Appellant, *Pro Se*

## TABLE OF CONTENTS

*JURISDICTIONAL STATEMENT* ........................................................................ 7

*STATEMENT OF ISSUES* ............................................................................. 8

*SCOPE OF REVIEW* ................................................................................. 8

*STATEMENT OF THE CASE* .......................................................................... 9

*STATEMENT OF FACTS* ............................................................................. 9

*SUMMARY OF THE ARGUMENT* ..................................................................... 15

*ARGUMENT* ...................................................................................... 19

*A.* **Standard of Review** ..................................................................... 19

*B.* **The district court erred by relying on hearsay for the grant of summary judgment against the Appellant.** ........................................................... 20

*C.* **The district court erred by dismissing the claims of sexual and racial harassment and hostile work environment without giving due weight to the evidence presented in the case by the Appellant.** ............................................... 17

*D.* **The district court erred by dismissing the claims for race and gender discrimination by failing to appreciate the evidence presented by Appellant.** ............. 21

*E.* **The district court erred in the grant of summary judgement against the Appellant for retaliation of Respondent.** ..................................................... 24

*F.* **The district court erred in the grant of summary judgement against the Appellant for assault by Respondent.** .................................................................... 28

*CONCLUSION* ..................................................................................... 26

*EXHIBIT A (ORDER OF DISTRICT COURT)* ...........................................................................*27*

*CERTIFICATE OF SERVICE* ................................................................................................*28*

*CERTIFICATE OF COMPLIANCE* .........................................................................................*29*

# <u>TABLE OF AUTHORITIES</u>

## <u>Case Law:</u>

*American Cyanamid v. Capuano*, 381 F.3d 6, 21 (1st Cir. 2004).

*Doyle v. Hasbro*, 103 F.2d 186, 190 (1st Cir. 1996).

*Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

Morrow v. Wal-Mart Stores, Inc., 152 F.3d 559, 563 (7th Cir. 1998).

*King v. Illinois Dep't of Juv. Just.*, No. 12 C 5450, 2014 WL 1560303.

*United States v. Giles,* 67 F. Supp. 2d 947.

*United States v. Hall, 165 F.3d 1095*, 1110 (7th Cir. 1999).

*United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir. 1996).

*Rock v. Huffco* Gas & Oil Co., Inc., 922 F.2d 272, 283 (5th Cir. 1991).

*Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018).

*Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 635 (7th Cir. 2009).

*Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993).

*Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 600 (7th Cir. 2021).

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

*Robinson v. Sappington*, 351 F.3d 317, 330 (7th Cir. 2003).

*Vance v. Ball State Univ.*, 570 U.S. 421, 427, 133 S. Ct. 2434, 186 L. Ed. 2d 565 (2013).

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986).

*Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 714 (7th Cir. 2021).

*Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir.).

*Johnson v. Advocate Health & Hosps.* Corp., 892 F.3d 887, 894 (7th Cir. 2018).

*Boss v. Castro,* 816 F.3d 910, 917 (7th Cir. 2016).

*Vandeventer v. Wabash Nat'l Corp.*, 887 F. Supp. 1178.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).

*Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir. 1989).

*Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1261-62 (7th Cir. 1993).

*Collins v. American Red Cross*, 715 F.3d 994, 998 (7th Cir.2013).

*Porter v. City of Chi.*, 700 F.3d 944, 957 (7th Cir.2012).

*Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir.2013).

*Univ. of Tex. Sw. Med.Ctr. v. Nassar*, 133 S.Ct. 2517 (2013).

*Cung Hnin v. TOA* (USA), LLC, 751 F.3d 499, 508 (7th Cir. 2014).

*Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 925 (7th Cir. 2019).

*Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111 (7th Cir. 1992).

*Holland v. Jefferson Nat'l Life Ins*. Co., 883 F.2d 1307, 1314 (7th Cir. 1989).

*Berg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1043 (7th Cir. 1980).

*Carroll v. YMCA of Metro Chicago*, LLC, No. 13-cv-9307, 2015 WL 149024.

*Meerbrey v. Marshall Field & Co. Inc.*, 564 N.E.2d 1222, 1226 (Ill. 1990).

*Abbott v. Sangamon County*, 705 F.3d 706, 715 (7th Cir. 2013).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

*Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021)

*Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020).

*White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016)

## Statutes:

Fed. R. Civ. P. 56(e)

Fed. R. Evid. 801.

Fed. R. Evid. 807.

42 U.S.C. § 2000e-2(a)(1).

Section 1981. Dkt. 73 at 2, 10.

28 U.S.C. § 1294

## JURISDICTIONAL STATEMENT

This Court possesses jurisdiction over the present Appeal as established by 28 U.S.C. § 1294, given that it concerns an Order emanating from the District Court for the Northern District of Illinois, Eastern Division. It is well-settled that this Court of Appeals for the First Circuit exercises jurisdiction over Appeals originating from the District Court for the Northern District of Illinois, Eastern Division, by virtue of its geographical purview for the purpose of hearing Appeals from said District Court.

## STATEMENT OF ISSUES

**1.**  Whether the District Court committed reversible error by according to undue weight to hearsay evidence, to the detriment of first-hand evidence, in its grant of Summary Judgment against the Appellant.

**2.**  Whether the District Court erred in its grant of Summary Judgment against the Appellant with respect to claims of sexual and racial harassment and the creation of a hostile work environment, by failing to afford proper weight and consideration to the evidentiary record presented in this matter.

**3.**  Whether the District Court erred in its grant of Summary Judgment against the Appellant concerning allegations of race and gender discrimination, specifically by neglecting to appreciate and fully consider the evidentiary submissions made by the Appellant.

**4.**  Whether the District Court erred in its grant of Summary Judgment against the Appellant regarding allegations of retaliation by the Respondent, by failing to conduct a thorough and appropriate assessment of the evidentiary basis presented by the Appellant.

**5.**  Whether the District Court erred in its grant of Summary Judgment against the Appellant pertaining to allegations of assault by the Respondent, by neglecting to engage in a comprehensive examination of the evidentiary record proffered by the Appellant.

## SCOPE OF REVIEW

6.  Issues 1-3 involve challenges to the district court's factual determinations, which should be subject to reversal upon a finding of clear error, in accordance with the precedent set forth in *American Cyanamid v. Capuano*, 381 F.3d 6, 21 (1st Cir. 2004).

7.  Issues 4 and 5 pertain to matters of law, and, therefore, are subject to de novo review by this appellate court, consistent with the principles enunciated in *Doyle v. Hasbro*, 103 F.2d 186, 190 (1st Cir. 1996).

## STATEMENT OF THE CASE

This Appellate Brief pertains to the appeal arising from the District Court's Entry of Summary Judgment in favor of the Respondent, Ford Motor Company (herein **"Ford"**), and against the Appellant, Helen Allen (herein **"Allen" or "Appellant"**). Allen, who had been employed by Ford for a tenure spanning twenty (20) years, was forced into retirement due to medical and stress related reasons while on a leave of absence. Ultimately, Appellant's stress and premature forced retirement resulted from retaliation for raising grievances related to racial, sexual, and gender discrimination, as well as assault allegedly perpetrated by Ford.

In response to these allegations, Allen initiated a Civil Action wherein she asserted claims against Ford, including gender and race-based discrimination, retaliation, racial harassment, the creation of a hostile work environment, and assault. The District Court, through an Order dated August 8, 2023, granted Ford's Motion for Summary Judgment, citing the presentation of hearsay evidence by Allen as a basis for this decision.

Importantly, Allen had previously joined forces with other Plaintiffs in 2014 to bring a lawsuit against Ford, seeking to certify a putative class of women who alleged experiencing sexual harassment. Following the Court's denial of class certification on two occasions, Allen's claims were severed from those of her Co-Plaintiffs and transferred to this Court.

Specifically, Allen's operative Complaint in the present suit includes the following counts: (1) Allegations of sexual harassment, gender discrimination, and the establishment of a hostile work environment on the basis of sex, under Title VII; (2) Retaliation in contravention of Title VII; (3) Claims of race discrimination, racial harassment, and the creation of a hostile work environment on the basis of race, also under Title VII; (4) Race discrimination pursuant to 42 U.S.C. § 1981; and (5) Allegations of assault. The District Court's Order dated August 8, 2023, dismissed these counts due to the presentation of hearsay evidence by Allen.

The present appeal is brought forth by Allen, contesting the District Court's dismissal of her claims and the consequent grant of Summary Judgment in favor of Ford.

## **STATEMENT OF FACTS**

The Appellant, Helen Allen, an individual identifying as an African-American Muslim woman, initiated her employment with Ford in the year 2000. The Appellant later transitioned to the Chicago Assembly Plant (CAP) located in Chicago, Illinois, where she occupied the role of an hourly plumber/pipefitter, commencing on January 23, 2012, and continuing until August 4, 2016. Subsequently, the Appellant transferred to a different Ford facility located in Ohio where she was compelled to retire due to medical reasons in August 2020.

The Appellant, during her tenure, took an authorized medical leave of absence due to stress-related concerns. During her sanctioned leave of absence, the Appellant was persuaded by the Appellee to initiate the application process for Social Security benefits. The Appellant was promptly approved for Social Security benefits. The Appellant contends that she faced an environment at her place of employment that ultimately coerced her resignation, creating a constructive discharge. This situation led to her involuntary early retirement, despite the possibility of her continuing her professional activities for a potential period of 17 additional years.

During her tenure at the CAP, the plant maintained a substantial workforce, employing over 4,600 individuals in total and over 1,000 per shift during Allen's employment there. Allen was represented by a local chapter of the United Auto Workers ("UAW").

Notably, Ford administered a comprehensive Anti-Harassment Policy throughout Allen's association with the company. This policy explicitly instructed employees to "immediately report" any alleged harassment to their supervisors, local Human Resources (HR) representatives, referred to as Labor Relations for hourly employees, or Ford's anti-harassment hotline. Allen received training on this policy and had a clear understanding of its provisions.

In May 2012, Allen communicated her concerns via email to a production manager, characterizing the CAP as "dysfunctional" and expressing a desire for the plant's closure to

facilitate her transfer elsewhere. Subsequently, in August 2012, Allen submitted a handwritten note to Labor Relations, wherein she contended that she had become a "bull's eye" following her May 2012 complaint. In the note, Allen alleged that her superintendent had been unduly harsh towards her and had engaged in micromanagement, including requiring her to carry a radio. Furthermore, Allen asserted that her superintendent was discriminating against her due to her status as "a black, [M]uslim female that he can't intimidate or sleep with." During an interview with Labor Relations, Allen clarified that the superintendent's strict management style was applied uniformly to all employees, not solely to her. When questioned about specific actions or instances of discrimination targeting her, Allen was unable to pinpoint any particular behavior, explaining that it was more of a subjective feeling that may not necessarily be accurate. Consequently, Labor Relations concluded the complaint, finding no evidence to substantiate claims of discrimination based on race, religion, or gender.

In April 2013, Appellant initiated the first of three charges filed with the Equal Employment Opportunity Commission ("EEOC"). In this charge, she alleged instances of retaliation and discrimination based on multiple grounds, including race, color, gender, and religion. Within this charge, Allen contended that she had faced disciplinary actions on two occasions and alleged that "non-Black, light-skinned employees" were subjected to less severe disciplinary measures. However, she did not identify the individuals responsible for the alleged retaliation or specify the protected activity related to her claims. Additionally, she asserted that she had been denied a "religious accommodation," although the charge did not provide details about this accommodation request. Notably, this charge did not make any reference to racial or sexual harassment.

In July 2013, Allen directly communicated with CAP's Plant Manager via email, registering complaints of harassment, retaliation, and prejudice directed at her based on her race and religion, as well as "some other prejudices." In her email, she alleged being deprived

of "proper lunches and breaks," claiming that her complaints had made her a more prominent target. Allen also mentioned exposure to profane language throughout the workday but did not specify instances, individuals responsible, whether it was directed at her, or if it had racial or sexual undertones.

Subsequently, in December 2013, Allen sent an email to CAP's HR Manager, reporting an incident involving a male security contractor who had allegedly used profanity towards her. However, during the subsequent interview, Allen acknowledged that the situation had arisen after she had made an error by causing a flood when she drained CAP's fire protection system without first turning off the water. According to Allen, the security contractor had told her, "if you don't know what the F you're doing, don't touch the MF system." In response to Allen's email, Ford conducted interviews with several witnesses, including the security contractor, who denied using profanity towards Allen during the incident.

On January 15, 2014, Appellant provided a statement to Labor Relations, wherein she, for the first time, asserted that she had been exposed to frequent instances of what she described as "sex talk" at CAP, occurring not on a monthly basis, but daily. When pressed for details, Allen made several allegations concerning a male Plant Engineering Manager. She claimed that when she informed the Plant Engineering Manager that she had not signed off on work orders, he responded with profanity. Furthermore, Allen alleged that she overheard the same engineering manager, on separate occasions, make derogatory comments about one employee's anatomy and another employee's conduct. Allen also mentioned an instance involving a male hourly carpenter who had purportedly made a sexual joke, although she could not recall the specifics. Later that day, Allen requested that Labor Relations withdraw her complaint, expressing her reluctance to have anyone disciplined based on her report.

Notwithstanding Allen's request, Ford Labor Relations and UAW personnel conducted additional interviews with Allen and seven other Ford employees regarding her complaint.

Allen supplemented her complaint with a "chronology" listing all the offensive language she had allegedly overheard at CAP since 2012. In this chronology, she documented six incidents involving unnamed coworkers, during which she claimed to have overheard crude sexual remarks over a two-year period spanning from 2012 through 2013. Ford's investigation could not substantiate Allen's complaints about the engineering manager, nor could it identify the unnamed coworkers mentioned in Allen's chronology. However, Ford did conclude that the hourly carpenter had used inappropriate language and imposed a one-month suspension.

Subsequently, in February 2014, Allen raised concerns about two instances of phallic graffiti at the Plant. During her interview, Allen disclosed that she had actively sought out the graffiti after hearing a radio call requesting a painter to cover it up. One of the images had already been removed by the time she arrived, prompting her to request a picture of the covered-up graffiti from a coworker. Ford, in conjunction with UAW, initiated an investigation and interviewed ten individuals, including Allen, but could not identify the individual(s) responsible for the graffiti.

In the following month, March 2014, Allen submitted two complaints on the same day, both related to an incident outside a men's bathroom. A joint Ford/UAW team investigated the matter and found no basis to conclude that Allen had been subjected to sexual harassment. During her interview, Allen disclosed for the first time that she had been accidentally exposed by a supervisor in 2013 when he entered a bathroom where she was working, seemingly unaware of her presence. The supervisor subsequently apologized to her for the incident.

In February and March of 2014, Appellant made a series of claims alleging that she had been "outed" as a complainant within the organization. Initially, she lodged a hotline call, asserting that Human Resources (HR) had disclosed her name during an anti-harassment training. However, Allen subsequently withdrew this complaint upon discovering that HR had not actually divulged her identity.

Following this, Allen contended that during a UAW meeting, the UAW Chairman had disclosed that the UAW's Civil Rights Committee intended to investigate a complaint she had made to the UAW. Furthermore, Allen alleged that a Labor Affairs Manager had informed employees to "be careful" because she was preparing to sue Ford. Although Allen later testified that she personally had not heard this comment, she claimed that others had relayed it to her secondhand.

In May 2014, Allen emailed Labor Relations, raising concerns about an altercation she had with an engineering specialist. The specialist accused Allen of refusing an assignment, becoming confrontational, and leaving the job site. Allen maintained that she had declined the assignment on safety grounds and asserted that the engineering specialist "seems to have issues with women and minorities." When asked why she believed this, Allen stated that other women and minorities had conveyed similar concerns to her.

Subsequently, Allen lodged several complaints in June and July 2014. One of her complaints pertained to a female coworker's attire, with Allen noting the coworker's choice of "short sleeves and Capri pants" at work. A month later, Allen alleged that an area manager was retaliating against her by inquiring about her phone usage at work. Allen subsequently went on leave for a period of five months. Upon her return, Labor Relations interviewed her but did not substantiate her complaints regarding the area manager's retaliation.

In March 2015, Labor Relations conducted an interview with Allen following her complaint that a team manager was mistreating two other women. Allen claimed that one woman had filed a complaint against the manager, while another alleged that the manager had wrongfully denied her leave. Additionally, Allen mentioned a third woman, whom she did not personally know but had heard of, who was reputedly "known for grabbing [men's] private parts." Labor Relations later informed Allen that it had investigated and resolved the complaints.

In April 2015, Allen voiced concerns about "tension" with a male coworker and described her workplace environment as "hostile" because the coworker did not want to work with her. She contended that this amounted to a form of harassment and believed that her supervisors were retaliating against her by offering the coworker overtime opportunities that she thought she deserved. Ford's investigation determined that the coworker had a different job classification than Allen, impacting their overtime eligibility. Ford also reminded Allen that she did not have her own work area and needed to share space with others.

Furthermore, in April 2015, Allen raised complaints about a female coworker who had allegedly made threatening remarks and exhibited inappropriate physical contact with male coworkers. Allen alleged that the coworker had stated, "I will [engage in physical violence] against anyone, male or female," and had made suggestive gestures toward Allen. She also claimed that the coworker was known for inappropriate physical contact with male coworkers, which Allen disagreed with.

In August of the same year, Allen made another hotline call, this time alleging that the same female coworker had used offensive language and engaged in confrontational behavior. Labor Relations investigated and corroborated the incident, leading to the suspension of Allen's female coworker.

In 2016, Allen spent just three months working at CAP before transferring to another Ford facility. During this brief period, she did not make any harassment complaints.

## SUMMARY OF THE ARGUMENT

1. The District Court's failure to apply the exception rule of trustworthiness to the Appellant's harassment claims rooted in hearsay evidence constitutes reversible error. The district court neglected to establish the untrustworthiness of the Appellant's statements, rendering them hearsay. This is evident in light of the U.S. Equal Employment and Opportunity Commission's findings, dated February 20, 2015, affirming the validity of the Appellant's

discrimination claims. The district court erred by disproportionately relying on hearsay while disregarding exceptions to the hearsay rule in the assessment of the Appellant's evidentiary submissions. Consequently, the District Court's grant of Summary Judgment in favor of Appellant, grounded in hearsay over first-hand evidence, is flawed.

2. The Appellant's claims of discrimination and the existence of a hostile work environment revolve around the differential treatment experienced by other employees, including managerial and supervisory personnel, who engaged in profanity, gossip, and passive-aggressive behavior. This environment rendered the Appellant uncomfortable and deprived her of the workplace protection warranted by her gender and race. An all-encompassing analysis of the situation, taking into account the evidence proffered by the Appellant, demonstrates that the district court erred in concluding the absence of a hostile work environment. Thus, the district court's dismissal of the Appellant's claims encompassing sexual and racial harassment and a hostile work environment, bereft of proper consideration for the evidence presented, is erroneous.

3. In accordance with McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), Appellant satisfies the prerequisites for a discrimination claim: (1) membership in a protected class; (2) job performance consistent with the employer's legitimate expectations; (3) encountering an adverse employment action; and (4) disparate treatment compared to similarly situated employees of the opposite sex. Appellant has substantiated her claims of discrimination based on race and gender with compelling evidence. The district court erred by summarily dismissing these claims without a thorough examination of the Appellant's evidentiary submissions.

4. The District Court's deviation from the established standard of requiring a subjectively sincere and objectively reasonable belief that the challenged actions violated Title VII, as delineated in Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1457-58 (7th Cir. 1994), is

apparent in this case. The Appellant has presented compelling evidence illustrating the denial

of overtime opportunities, severe micromanagement, and harsh treatment in response to her

complaints against the Respondent. Consequently, the district court's grant of summary

judgment against the Appellant for retaliation lacks a proper foundation.

5.   Under Illinois law, an assault transpires when an individual's actions elicit fear of

battery in another person. Verbal threats, when combined with accompanying gestures, can

meet the threshold for an assault. The Appellant was subjected to verbal assault, shouted at,

inappropriately exposed to, and targeted, contributing to an environment where she felt unsafe

and violated. The district court's decision to grant summary judgment against the Appellant for

assault by the Respondent, who bore responsibility for both the creation and prevention of

misconduct in the workplace, exacerbated the verbal and emotional assault endured by the

Appellant. This decision, too, is flawed and merits reversal.

**ARGUMENT**

A.   Summary judgment is warranted when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine dispute

concerning material facts exists when "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The determination of materiality is dictated by substantive law. Id. Once a properly supported

motion for summary judgment is presented, the opposing party must substantiate specific facts

demonstrating the existence of a genuine issue for trial. Id. at 250.

In ruling on summary judgment, the Court scrutinizes all evidence in the record,

adopting the most favorable view for the non-moving party and drawing reasonable inferences

in their favor. Logan v. City of Chicago, 4 F.4th 529, 536 (7th Cir. 2021). The Court must

refrain from making credibility determinations or weighing evidence. Viamedia, Inc. v.

Comcast Corp., 951 F.3d 429, 467 (7th Cir. 2020) (citing Anderson, 477 U.S. at 255). While the Court must grant the non-moving party the benefit of reasonable inferences, speculative inferences are excluded. White v. City of Chicago, 829 F.3d 837, 841 (7th Cir. 2016). The paramount question is whether a reasonable trier of fact could be found in favor of the non-moving party based on the submitted evidence.

**B.  The District Court's Error in Relying on Hearsay for Summary Judgment Against Appellant**

The district court's grant of summary judgment disproportionately rested on the significance of hearsay evidence, an erroneous approach to which Appellant strongly objects. The district court has failed to establish, as a matter of fact, that the Appellant's statements lack trustworthiness and therefore qualify as hearsay. Notably, the U.S. Equal Employment and Opportunity Commission, in its report dated February 20, 2015, corroborated the validity of the Appellant's discrimination claims, casting doubt on any assertion of untrustworthiness. Regrettably, the district court gave undue weight to hearsay evidence while neglecting to consider exceptions to the hearsay rule, resulting in an erroneous grant of summary judgment. Consequently, the district court's decision to prioritize hearsay over first-hand evidence is legally flawed and warrants reversal.

Ford contends that Appellant's sexual harassment claims, such as allegations of individuals being "known for grabbing" coworkers and derogatory workplace comments, are inadmissible hearsay. Similarly, the Appellant's racial harassment claims, which involve derogatory language not directed at her directly, are challenged as inadmissible hearsay. While Appellant argues that pervasive inappropriate workplace discussions justify her reluctance to report each instance, this argument fails to address the core issue of her reliance on inadmissible

hearsay. Consequently, the Court should decline to consider hearsay statements when evaluating the presence of genuine issues of material fact.

The admission of hearsay statements is governed by Fed. R. Evid. 807, the catchall or residual exception, which imposes specific criteria: circumstantial guarantees of trustworthiness, materiality, probative value, the interests of justice, and notice. This exception is construed narrowly to prevent it from circumventing the hearsay rule entirely. The critical element in admitting hearsay statements under this exception is the district court's finding of trustworthiness. In this context, self-serving statements cannot meet the required "circumstantial guarantees of trustworthiness." The district court's failure to apply the exception of trustworthiness to the Appellant's hearsay-based harassment claims constitutes reversible error, especially when strong evidence supporting the Appellant's claims is available. *The district court's reluctance to evaluate the trustworthiness of the Appellant's statements in the context of hearsay evidence demonstrates a clear legal error. By giving undue prominence to hearsay while disregarding exceptions, the district court's grant of summary judgment against the Appellant, despite the existence of first-hand evidence, must be rectified.*

## C. The district court erred by dismissing the claims of sexual and racial harassment and a hostile work environment without giving due weight to the evidence presented in the case by the Appellant.

Title VII's antidiscrimination provision makes it "unlawful ... for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on a hostile work environment claim, Allen must show that "(1) the work environment was objectively and subjectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). "[H]arassment which is 'sufficiently severe or pervasive to alter the

conditions of ... employment' is actionable under Title VII." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 635 (7th Cir. 2009)

As per the district court, Allen's harassment and hostile work environment claims are mainly premised on hearsay statements, which as discussed, are inadmissible at this stage. The non-hearsay statements Allen relies on do not show a workplace "with discriminatory intimidation, ridicule, and insult, ... sufficiently pervasive to alter the conditions of employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993).

Contrary to the court's findings, it is stated that Appellant has provided evidence that in August 2012, Allen gave a handwritten note to Labor Relations, claiming that she had become a "bulls-eye" because of her May 2012 complaint. Id. ¶ 22. Allen claimed her superintendent was "very harsh" to her and "micro-manage[d]" her by, among other things, "insisting" that she carry a radio. Id. Allen asserted that the superintendent was "discriminating" against her because she was "a black, [M]uslim female that he can't intimidate or sleep with."

In April of 2015, Allen made complaints about a female coworker. DSOF at ¶ 87. According to Allen, the coworker had said, "I will fuck a bitch up, male or female," and gestured toward Allen. Id. Allen alleged the coworker "is known to grab mens [sic] personal parts," and squeeze men's butts and "hug" them, which Allen did not "agree with." Id. In August, Allen made a hotline call, alleging the same female coworker had told Allen and a male coworker to "get the fuck out" of an area and said to Allen, "fuck you bitch."

To succeed on a hostile work environment claim, a plaintiff must show: (1) unwelcome harassment; (2) based on a protected characteristic; (3) that was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) a basis for employer liability. *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 600 (7th Cir. 2021)

A hostile work environment is based on the totality of the circumstances. Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). This inquiry is "fact intensive." Howard, 989 F.3d at 604. For example, we account for "the specific circumstances of the working environment" as well as "the relationship between the harassing party and the harassed." *Robinson v. Sappington*, 351 F.3d 317, 330 (7th Cir. 2003). Finding a hostile work environment, then, "is not, and by its nature cannot be, a mathematically precise test." Harris, 510 U.S. at 22. But when proved, one thing is certain: "the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State Univ.*, 570 U.S. 421, 427, 133 S. Ct. 2434, 186 L. Ed. 2d 565 (2013); accord *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986).

In this case, the Appellant's claims of discrimination and hostile work environment depend on certain liberties afforded to other employees, including managers/supervisors, who could get away with their profane speech, back biting, leg pulling, indecent gossip, and passive aggression which led Appellant to feel uncomfortable to work in such environment and not be afforded the protection to work safely based on her gender and race. Taking the entirety of the situation into account based on the evidence presented by the Appellant, the district court erred in finding that there was no hostile environment present at the workplace of the Appellant. Therefore, the district court erred by dismissing the claims of sexual and racial harassment and a hostile work environment without giving due weight to the evidence presented in the case by the Appellant.

**D. The district court erred by dismissing the claims for race and gender discrimination by failing to appreciate the evidence presented by the Appellant.**

As per the district court, Allen claims that Ford subjected her to adverse actions because of her gender and race in violation of Title VII. Additionally, she alleges race discrimination under Section 1981. Dkt. 73 at 2, 10. This Court uses the same standards in evaluating these claims. *Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 714 (7th Cir. 2021) (observing that the "legal standard is the same under" Title VII and Section 1981). In discrimination cases, "[w]hen a defendant moves for summary judgment, the 'singular question for the district court is whether the plaintiff has introduced evidence that would 'permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir.), reh'g denied (July 31, 2020) (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)).

Allen alleged that she was suspended twice in 2012 for leaving the CAP without permission and once in 2013 for being late. DSOF at ¶¶ 61, 104, 112. Allen asserts other non-Black and male employees were treated less harshly. However, her deposition testimony undercuts these claims. As for the 2012 suspensions, Allen testified she was suspended alongside a white male coworker. DSOF at ¶ 112; Def. Ex. B-2 at 29:10-23. Regarding the reprimand based on tardiness, Allen testified that she and another Black woman were disciplined but the discipline was not removed from her record because she was Muslim and not because of her race or sex. DSOF at ¶ 61. This is a bias based on religion (not at issue in this case) not race.

Allen also alleges that she suffered an adverse employment action when she was asked to carry a radio, micromanaged and denied lunch breaks. DSOF at ¶¶ 22, 24, 27–29. These actions do not rise to the level of a materially adverse employment action. See *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (materially adverse employment action is one where the plaintiff suffers "a significant change in employment status.").

As per *Vandeventer v. Wabash Nat'l Corp.*, 887 F. Supp. 1178: "Sexual harassment is illegal because and only because it is a form of gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. Sexual harassment is a subset of gender discrimination. The concept of sexual harassment is an acknowledgment that when a male employer requires a woman to submit to him sexually for a promotion or creates a sexually hostile environment, he is discriminating against her on the basis of her gender. Gender discrimination is the root; absent a base in gender discrimination, there can be no actionable sexual harassment. One can most certainly be the victim of gender discrimination without being a victim of sexual harassment; however, the reverse is not true. One cannot be the victim of actionable sexual harassment if one is not a victim of gender discrimination."

In order to state a Title VII sex discrimination claim, a plaintiff must follow the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), which requires that the plaintiff meet the initial burden of establishing a "prima facie case" or be subject to dismissal. See *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir. 1989). Normally, a plaintiff must allege four specific facts to make out a prima facie case of sex discrimination: (1) that he or she is a member of a protected class; (2) that he or she was performing the job in a manner consistent with the employer's legitimate business expectations; (3) that he or she suffered from an adverse employment action; and (4) that similarly situated employees of the opposite sex were treated more favorably. See McDonnell Douglas, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (race discrimination case); *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1261-62 (7th Cir. 1993), cert. denied, 128 L. Ed. 2d 48, 114 S. Ct. 1372 (1994).

As stated above, (1) Allen is a member of a protected class; (2) Allen was performing the job in a manner consistent with the employer's legitimate business expectations; (3) Allen suffered from an adverse employment action; and (4) that similarly situated employees of the

opposite sex were treated more favorably. Allen was discriminated against due to her race and gender in view of the evidence. The district court erred by dismissing the claims for race and gender discrimination for the grant of summary judgment against the Appellant by failing to appreciate the evidence presented by the Appellant.

**D. The district court erred in the grant of summary judgment against the Appellant for retaliation of Respondent.**

"Title VII forbids retaliating against an employee 'because [she] has opposed any practice made ... unlawful ... by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Collins v. American Red Cross*, 715 F.3d 994, 998 (7th Cir.2013) (quoting 42 U.S.C. § 2000e–3(a)). To survive summary judgment on a Title VII retaliation claim under the direct method of proof, a plaintiff must submit evidence from which a jury could reasonably conclude that (1) [she] engaged in statutorily protected activity; (2) [she] suffered a materially adverse action; and (3) a causal link between the two. See *Porter v. City of Chi.*, 700 F.3d 944, 957 (7th Cir.2012). Title VII retaliation claims "require traditional but-for causation, not a lesser 'motivating factor' standard of causation." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir.2013) (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517 (2013)). See also Cung Hnin v. TOA (USA), LLC, 751 F.3d 499, 508 (7th Cir. 2014).

"It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered". See *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 925 (7th Cir. 2019). To establish a prima facie retaliation claim, the plaintiff must allege that: (a) the plaintiff participated in Title VII proceedings or otherwise engaged in protected activity relating to his right to be free from unlawful discrimination or harassment; (b) there was subsequently an adverse employment action by the employer; and (c) there was a causal link between the protected

activity and the adverse action. *Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111 (7th Cir. 1992).

A retaliation claim does not require a valid Title VII complaint, only a subjectively sincere and objectively reasonable belief that the actions challenged violated Title VII. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457-58 (7th Cir. 1994); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1314 (7th Cir. 1989). In determining the reasonableness of the belief that he/she was being discriminated against, the court must look to the preexisting case law. See *Berg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1043 (7th Cir. 1980).

The district court did not follow the standard of a subjectively sincere and objectively reasonable belief that the actions challenged violated Title VII as per *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457-58 (7th Cir. 1994) in this case. Allen has presented evidence that she was not given overtime opportunities, was micromanaged severely, and was treated harshly for her complaints against the Respondent. Therefore, the district court erred in the grant of summary judgment against the Appellant for retaliation of Respondent.

## E. The District Court's Error in Granting Summary Judgment for Assault by Respondent

The district court's decision to grant summary judgment against the Appellant for assault by Respondent is erroneous and fails to consider critical aspects of the case. The district court invoked the Illinois Workers' Compensation Act, which preempts assault claims against employers by their employees unless the employer expressly authorized the intentional tort. Carroll v. YMCA of Metro Chicago, LLC, No. 13-cv-9307, 2015 WL 149024 at *4 (N.D. Ill. Jan. 9, 2015) (citing Meerbrey v. Marshall Field & Co. Inc., 564 N.E.2d 1222, 1226 (Ill. 1990)). However, the district court did not account for the fact that the Appellant was subjected to egregious behavior, including verbal assault, shouting, and inappropriate flashing.

In Illinois, an assault occurs when an individual's conduct places another person in reasonable apprehension of receiving a battery. 720 Ill. Comp. Stat. 5/12-1(a). While mere

words alone typically do not constitute an assault, a verbal threat coupled with a menacing gesture may qualify as such. For instance, in Abbott v. Sangamon County, 705 F.3d 706, 715 (7th Cir. 2013), it was held that probable cause existed to arrest the plaintiff for assault when he verbally threatened animal control officers while making a threatening gesture.

The Appellant's situation involved more than mere words; she was subjected to shouting, inappropriate flashing, and verbal assault. Consequently, the district court's decision to grant summary judgment against Appellant for assault was flawed. Additionally, it is noteworthy that Respondent played a pivotal role in fostering an environment where such misbehavior was allowed to persist upon complaint. This environment further exacerbated the verbal and emotional assault against the Appellant. As such, the district court's ruling on this matter merits reconsideration and reversal.

## CONCLUSION

The Appellant, Pro Se, respectfully submits this Appeal and contends that the District Court's grant of Summary Judgment should be subject to reversal and remand for subsequent deliberation and adjudication. The errors and omissions in the lower court's decision have led to a miscarriage of justice that demands immediate redress through a thorough and comprehensive reevaluation of the case.

Respectfully Submitted By:

/s/ Helen Allen
Helen Allen
9530 Pineview Road
Suffolk, VA 23437
Appellant, *Pro Se*

Dated: October 11, 2023

**<u>EXHIBIT A (ORDER OF DISTRICT COURT)</u>**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Helen Allen,

Plaintiff,

v.

Ford Motor Company,

Defendant.

Case No. 21-cv-962

Judge Mary M. Rowland

### ORDER

Plaintiff Helen Allen brings this action against her former employer, Defendant Ford Motor Company (Ford) claiming that it violated federal and state employment statutes prohibiting race and gender discrimination, retaliation as well as state law claims of intentional infliction of emotional distress and assault. For the reasons stated below, Defendant's motion for summary judgment [79] is granted.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the

1

non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## I.     Local Rule 56.1

In moving for summary judgment, Ford initially argues that Allen failed to comply with Local Rule 56.1. "Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted). This applies as well to a *pro se* litigant. *See Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011); *Clay v. Williams*, No. 17 C 6461, 2020 WL 2836740, at *2 (N.D. Ill. May 31, 2020) (collecting cases).

The Court agrees that Allen's Local Rule 56.1 submissions are improper. First, Allen's response to Ford's 56.1 statement of facts does not properly dispute any of Ford's stated facts. As Ford noted, Allen does not cite to any record evidence to dispute Ford's asserted facts. In some cases, she does not state any reason for disputing a fact. *See* Pl. Resp. at ¶¶ 31, 51, 77, 93, 101, 102 (no reason for disputed fact); *see e.g.,* Pl. Resp. at ¶ 23 ("Dispute – The truce lasted 3 weeks"); *id.* ¶ 32 ("Dispute – Sabotage"). Where "a party merely disagrees with the movant's asserted facts that is inadequate to defeat summary judgment if made without reference to specific supporting material." *SMS Fin. Recovery Servs., LLC v. Canelo*, No. 21-cv-04000, 2023 WL 2161660, at *2 (N.D. Ill. Feb. 22, 2023). As such, the facts in Ford's statement of facts are deemed admitted.

Second, Allen's statement of additional facts is improper. A majority of these facts are not supported by citations to the record. Some of the facts are mere recitations of facts offered by Ford. *See* PSOF at ¶¶ 9 – 15; 21. Some are legal conclusions and others are statements that are not relevant to any of Allen's claims. *Id.,* at ¶¶ 80, 84, 36, 58, 104, 71. Where there are citations to the record, often they cite to what Allen calls "New Evidence". The "New Evidence" includes documents that were previously not produced in the litigation. Dkt. 112 at 3. In addition, Allen does not explain how the New Evidence bears on her current claims against Ford.[1]

---

[1] Allen cites an Illinois Worker's Compensation Commission ("IWCC") arbitration decision that was not produced in discovery. Dkt. 112 at 3. It is not relevant to this litigation as it concerns a different Ford facility, the Sharonville facility. Pl. Ex. Z-19, Dkt. 110. The Court previously denied Allen's request to amend her complaint and include claims from her tenure at the Sharonville facility. Dkt. 62.

Allen submitted 44 exhibits totaling 1,050 pages. Allen does not properly cite to this evidence. *See e.g.*, Pl. Resp. at ¶ 7 ("...New Evidence – Exhibit Z-19"); *id.*, at ¶ 13 ("...New Evidence – Larese Deposition). In some cases, she does not cite to any exhibit number, and it is often unclear if the material she cites was filed on the docket. *See e.g.* Pl. Resp. at ¶ 25 ("...Drummer 30B6"); *id.*, at ¶ 43("...Drummer 30B6-King, Lawanda). Many of the exhibits are duplicates of each other and in some instances, the same exhibit was submitted by Ford. *See* Dkt. 112 at n.2.

The Court is mindful that Allen is representing herself in this case. Still, Ford provided her with notice of her obligation in opposing summary judgment [84]. And the Court is not obligated to sift through hundreds of pages of documents to try to find potentially relevant evidence and arguments favoring Allen. *See D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) ("the district court's role in deciding the [summary judgment] motion is not to sift through the evidence, pondering the nuances and inconsistencies..."); *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010) ("it was not the district court's job to sift through the record and make [the party's] case for him"). Therefore, in deciding the present motion, the Court deems all the facts in Ford's statement of facts admitted and does not consider Allen's "New Evidence."

## BACKGROUND[2]

### I.　Allen Training and Ford's Anti-Harassment Reporting Procedures

Allen is an African-American Muslim woman. DSOF at ¶ 3. Ford hired Allen in 2000 and she eventually transferred to its Chicago Assembly Plant (CAP) in Chicago, Illinois, where she worked as an hourly plumber/pipefitter from January 23, 2012, until August 4, 2016. *Id.* at ¶¶ 5-6. Allen then transferred to another Ford facility in Ohio, where she took a medical retirement in August 2020. *Id.* ¶ 7. CAP employed over 4,600 people total and over 1,000 per shift when Allen worked there. DSOF at ¶ 2. A local chapter of the United Auto Workers ("UAW") represented Allen. *Id.* ¶ 14. Throughout Allen's tenure at CAP, Ford had a comprehensive Anti-Harassment Policy. DSOF ¶ 15. The Policy tells employees to "immediately report" alleged harassment to supervisors, local HR representatives (known as Labor Relations for hourly employees), or Ford's antiharassment hotline. *Id.* ¶ 18. Allen was trained on the Policy and understood it, *id.* ¶¶ 20, 116.

### II.　Allen's First Complaints at CAP

---

[2] These facts come from Ford's statement of facts [81]. Defendant's Rule 56.1 statement is at Dkt. 81 ("DSOF"); Plaintiff's Rule 56.1 statement is at Dkt. 113-1 ("PSOF"); Plaintiff's response to Defendant's Rule 56.1 statement is at Dkt. 91 ("Pl. Resp."); Defendant's response to Plaintiff's statement of facts is at Dkt. 113 ("Df. Resp.").

In May 2012, Allen emailed a production manager, claiming that CAP was "dysfunction[al]" and that she "pray[ed] that this plant shuts down, so [she] [could] get a transfer to anywhere." DSOF at ¶ 21. In August 2012, Allen gave a handwritten note to Labor Relations, claiming that she had become a "bulls eye" because of her May 2012 complaint. *Id.* ¶ 22. Allen claimed her superintendent was "very harsh" to her and "micro-manage[d]" her by, among other things, "insisting" that she carry a radio. *Id.* Allen asserted that the superintendent was "discriminating" against her because she was "a black, [M]uslim female that he can't intimidate or sleep with." *Id.* Labor Relations interviewed Allen, who explained the superintendent's "harsh" style was directed at all employees, not just her. *Id.* at ¶ 23. When asked how the superintendent "was discriminating against" her in particular, Allen could not "pinpoint" any specific behavior because, she said, "[i]t's just a feeling that may not be accurate." *Id.* Labor Relations closed the complaint, finding no evidence of discrimination on the basis of race, religion, or gender. *Id.* at ¶ 26.

In April 2013, Allen filed the first of her three Charges with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation and discrimination based on race, color, gender, and religion. DSOF at ¶ 29. She claimed she had been disciplined twice but that "non-Black, light skinned employees" were "not disciplined as severely". *Id.* Allen did not identify who had retaliated against her or for what protected activity. *Id.* She also claimed that she had been denied an unspecified "religious accommodation." *Id.* The Charge did not mention racial or sexual harassment. *Id.*

In July 2013, Allen emailed CAP's Plant Manager, complaining she had been "harassed and retaliated against" because of her "race and religion and [she] [was] sure some other prejudices." DSOF at ¶ 30. She asserted that she had been denied "proper lunches and break," and that when she complained, she became "more of a bulls eye." *Id.* Allen also claimed that she "hear[d] foul language every hour of the day," but provided no examples, and did not state who used the language, whether it was directed at her, or whether it was racial or sexual in nature. *Id.*

Next, in December 2013, Allen emailed CAP's HR Manager, claiming that a male security contractor had "used massive profanity towards" her. DSOF at ¶ 32. When interviewed, Allen conceded the situation arose after she had "made a mistake." *Id.* ¶ 33. Allen had caused a flood by draining CAP's fire protection system without first turning off the water. *Id.* at ¶ 34. The security contractor purportedly told Allen, "if you don't know what the F you're doing, don't touch the MF system." *Id.* at ¶ 33. In response to Allen's email, Ford interviewed several witnesses to the flood, including the security contractor, who denied using any profanity toward Allen. *Id.* at ¶ 34.

## III.  Allen's 2014 Harassment Complaints

On January 15, 2014, Allen gave a statement to Labor Relations, claiming for the first time that she heard "sex talk[]" at CAP "not once a month, [but] once a day." DSOF at ¶ 36. When pressed, Allen made several claims about a male Plant Engineering Manager. *Id.* She alleged that when she told the Plaint Engineering Manager that she had not signed off on work orders, he responded: "What the fuck [do] you want me to do?" *Id.* She claimed she overheard that same engineering manager, on separate occasions, say one employee had a "small weenie" and another "sucks and swallows." *Id.* Allen also alleged that a male hourly carpenter had made a "sexual joke" she could not recall. *Id.* at¶ 37. Later that day, Allen asked Labor Relations to "pull[]" her complaint as she did not want anyone disciplined based on it. *Id.*

Ford Labor Relations and UAW personnel nonetheless re-interviewed Allen and seven other Ford employees regarding her complaint. DSOF at ¶¶ 39, 43. Allen supplemented her complaint with a "chronology" of all the allegedly offensive language that she had overheard at CAP since 2012. *Id.* at ¶ 40. Allen listed six incidents, all involving unnamed coworkers, in which she had overheard crude sexual remarks over the course of a two-year period (from 2012 through 2013). *Id.* Ultimately, Ford did not corroborate Allen's complaints about the engineering manager and could not identify the unnamed coworkers in Allen's chronology. *Id.* at ¶ 43. Ford did conclude the hourly carpenter had used inappropriate language and suspended him for a month. *Id.* at ¶ 44.

Next, Allen complained in February 2014 about two instances of phallic graffiti at the Plant. DSOF ¶ at 46. When interviewed, Allen said she had actively sought out the graffiti after she overheard a radio call requesting that a painter cover it up. *Id.* at ¶ 48. By the time she arrived, one of the images had been removed. *Id.* Allen asked a coworker to text her a picture of the covered-up graffiti because she "wanted to see it." *Id.* A joint Ford/UAW team investigated and interviewed 10 people (including Allen) but could not identify who placed the graffiti. *Id.* at ¶ 49.

The following month, Allen submitted two complaints the same day about an incident outside a men's bathroom. DSOF at ¶ 63. A joint Ford/UAW team investigated and determined that Allen and her male co-worker had put up a "restroom closed" sign and were waiting outside the bathroom to start repairs once it was empty; she and her co-worker told an approaching male employee not to enter the bathroom, but he did anyway. *Id.* The team found no basis to believe that Allen had been sexually harassed. *Id.* During her interview, Allen claimed for the first time that she was "accidental[ly] flash[ed]" by a supervisor at some point in 2013 when the supervisor had entered a bathroom where she was working, apparently unaware that Allen was there; he then "apologized" to her for this "accident[]." *Id.*

## IV.    Allen's 2014 Retaliation Allegations

In February and March 2014, Allen made a series of claims that she had been "outed" as a complainant. Allen first made a hotline call, alleging that "HR used her name" during an antiharassment training; however, she later withdrew that complaint because she "found out" HR had not actually done so. DSOF at ¶ 50. Allen next alleged that at a UAW meeting, the UAW Chairman had disclosed that the UAW's Civil Rights Committee intended to investigate a complaint Allen had made to the UAW. *Id.* at ¶ 52. Then, Allen alleged that a Labor Affairs Manager had told employees "to be careful" because Allen was preparing to sue Ford. *Id.* at ¶ 60. Allen later testified she never heard this comment, but that others had told her about it secondhand. *Id.*

In May 2014, Allen emailed Labor Relations, complaining about an argument she had with an engineering specialist. DSOF at ¶ 67. The engineering specialist alleged Allen refused an assignment, became confrontational, and walked off the job. *Id.* at ¶ 66. Allen claimed she refused an "unsafe" job and asserted the engineering specialist "seems to have issues with women and minorities." *Id.* at ¶¶ 67–68. When asked why she believed that Allen said: "it's been other women and minorities who had issues" with him, and "I know this . . . because they told me." *Id.* at ¶ 68. The Plant closed this complaint without substantiating it. *Id.* at ¶ 69.

Allen then made several complaints in June and July 2014. DSOF at ¶ 70. Allen complained that a female coworker wore "short [] sleeves and Capri pants" at work. *Id.* A month later, Allen alleged an area manager was "retaliat[ing] against [her]" by asking her why she was using her phone at work. *Id.* at ¶ 71. Allen then went on leave for five months. *Id.* Labor Relations interviewed her upon her return but did not substantiate her complaints about the area manager's retaliation. *Id.* at ¶¶ 72-73.

## V.    Allen's 2015 Complaints and Retaliation Allegations

In March 2015, Labor Relations interviewed Allen after she complained that a team manager was allegedly mistreating two other women. DSOF at ¶ 78. According to Allen, one woman had submitted a complaint about the manager, and another had alleged the manager was wrongly denying her leave. *Id.* Allen also alleged a third woman whom Allen did not know, but had "heard of," was "known for grabbing [men's] private parts." *Id.* Labor Relations informed Allen after it had investigated and closed out the complaints. *Id.* at ¶ 79.

In April 2015, Allen complained about "tension" with a male coworker. DSOF at ¶ 80. Allen said she was experiencing a "hostile work environment" because the coworker "does not want to work with [her]." *Id.* at ¶¶ 80–81. Allen claimed it was "a form of harassment" that the coworker was "allowed to come to work." *Id.* Allen also complained it "fe[lt] like [her] supervisors [were] using forms of retaliation against [her]" because the coworker received overtime opportunities that Allen thought she

6

deserved. *Id.* at ¶¶ 83–84. Ford investigated and found that the coworker had a different job classification than Allen (and thus, different overtime eligibility). *Id.* at ¶ 86. Ford also reminded Allen she did not have her own work area and needed to share space with others. *Id.* Also in April 2015, Allen made complaints about a female coworker. DSOF at ¶ 87. According to Allen, the coworker had said, "I will fuck a bitch up, male or female," and gestured toward Allen. *Id.* Allen alleged the coworker "is known to grab mens [sic] personal parts," and squeeze men's butts and "hug" them, which Allen did not "agree with." *Id.*

In August, Allen made a hotline call, alleging the same female coworker had told Allen and a male coworker to "get the fuck out" of an area and said to Allen, "fuck you bitch." *Id.* at ¶ 89. Labor Relations investigated, corroborated the incident, and suspended Allen's female coworker. *Id.* at ¶ 93. In 2016, Allen spent just three months working at CAP before transferring to another Ford facility. She made no harassment complaints during that three-month period. *Id.* at ¶ 116.

## VI. Procedural History

Allen previously joined with other plaintiffs to file suit against Ford in 2014, seeking to certify a putative class of women who claimed to have been subjected to sexual harassment. DSOF at ¶ 8. After the Court denied two class certification attempts, Allen's claims were severed from those of her co-plaintiffs and reassigned to this Court. *Id.* at ¶¶ 10–11.

In this suit Allen's operative complaint [73] contains the following counts: (1) Sexual harassment, gender discrimination and hostile work environment on the basis of sex under Title VII; (2) Retaliation in violation of Title VII; (3) Race discrimination, racial harassment and hostile work environment on the basis of race under Title VII; (4) Race discrimination under 42 U.S.C. § 1981; and (5) Assault.[3]

## ANALYSIS

## I. Hearsay

Ford first argues that Allen attempts to rely on inadmissible hearsay in opposing summary judgment. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801. "A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). "Hearsay is inadmissible in summary judgment proceedings

---

[3] As Ford points out [80], Allen's intentional infliction of emotional distress claim was dismissed in the previous litigation, *Van*, 14-cv-8708, Dkt. 53, and was included in Allen's complaint for purposes of appeal only, Dkt. 62 at 2. Allen does not contest this in her response. Dkt. 88.

to the same extent that it is inadmissible in a trial." *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998).

Ford argues that Allen's statements supporting her sexual harassment claim such as (1) "everyone knows" one female was "known for grabbing" male workers; (2) another woman was "known to grab [men's] personal parts"; and (3) a supervisor was known to have "several girlfriends in the building," DSOF at ¶¶ 78, 87, 102, are inadmissible hearsay. As for her racial harassment claim, Ford argues that though Allen asserts that she "was repeatedly and frequently referred to as 'black bitch" and a host of derogatory terms in the workplace, she testified that no one ever called her these terms to her face and she was only aware of these comments from other coworkers. *See* Dkt. 73 at ¶ 62a-f; DSOF at ¶¶ 107–108.

Allen argues that the inappropriate discussions at work were so pervasive that if she complained every time, she would not be able to work. Dkt. 88 at 9. This does not address the problem that she is attempting to rely on inadmissible hearsay. Allen may not rely on hearsay. *See King v. Illinois Dep't of Juv. Just.*, No. 12 C 5450, 2014 WL 1560303, at *3 (N.D. Ill. Apr. 17, 2014) (explaining that "hearsay that cannot serve to create a genuine question of fact on summary judgment."). As such, the Court declines to consider the hearsay statements in determining whether there is a genuine issue of material fact as to any of her claims.

## II.    Sexual and Racial Harassment and Hostile Work Environment

Title VII's antidiscrimination provision makes it "unlawful ... for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To prevail on a hostile work environment claim, Allen must show that "(1) the work environment was objectively and subjectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). "[H]arassment which is 'sufficiently severe or pervasive to alter the conditions of ... employment' is actionable under Title VII." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 635 (7th Cir. 2009) (citation omitted).

Allen's harassment and hostile work environment claims are mainly premised on hearsay statements, which as discussed, are inadmissible at this stage. The non-hearsay statements Allen relies on do not show a workplace "with discriminatory intimidation, ridicule and insult, ... sufficiently pervasive to alter the conditions of employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). Though Allen had concerns with the language used amongst employees as well as physical contact such as hugging in the workplace, this does not

amount to severe or pervasive conduct. And importantly, Allen does not allege any sexually or racially harassing conduct or comments directed *towards her*.

As such, Ford is granted summary judgment on Allen's racial and sexual harassment and hostile work environment claims.

## III.    Race and Gender Discrimination

Allen claims that Ford subjected her to adverse actions because of her gender and race in violation of Title VII. Additionally, she alleges race discrimination under Section 1981. Dkt. 73 at 2, 10. This Court uses the same standards in evaluating these claims. *Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 714 (7th Cir. 2021) (observing that the "legal standard is the same under" Title VII and Section 1981).

In discrimination cases, "[w]hen a defendant moves for summary judgment, the 'singular question' for the district court is whether the plaintiff has introduced evidence that would 'permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir.), reh'g denied (July 31, 2020) (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)).

As discussed, Allen's reliance on hearsay statements will not be considered by the Court. Allen otherwise does not provide evidence to create a factual issue that she was discriminated against on a prohibited ground or suffered a materially adverse employment action.

Allen alleged that she was suspended twice in 2012 for leaving the CAP without permission and once in 2013 for being late. DSOF at ¶¶ 61, 104, 112. Allen asserts other non-Black and male employees were treated less harshly. However, her deposition testimony undercuts these claims. As for the 2012 suspensions, Allen testified she was suspended alongside a white male coworker. DSOF at ¶ 112; Def. Ex. B-2 at 29:10-23. Regarding the reprimand based on tardiness, Allen testifies that she and another Black woman were disciplined but the discipline was not removed from her record because she was Muslim and not because of her race or sex. DSOF at ¶ 61. This is a bias based on religion (not at issue in this case) not race.

Allen also alleges that she suffered an adverse employment action when she was asked to carry a radio, micromanaged and denied lunch breaks. DSOF at ¶¶ 22, 24, 27–29. These actions do not rise to the level of a materially adverse employment action. *See Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (materially adverse employment action is one where the plaintiff suffers "a significant change in employment status.").

Finally, regarding Allen's claim that she was denied overtime, Allen must show that "she applied for the overtime work, that she was qualified to do the overtime work, [and] that the overtime was given to people in the same job position." *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010). Allen does not provide any evidence that she was denied overtime due to her gender. For this reason, Ford is granted summary judgment on Allen's race and gender discrimination claims.

## IV.    Retaliation

"Title VII forbids retaliating against an employee 'because [she] has opposed any practice made ... unlawful ... by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Collins v. American Red Cross*, 715 F.3d 994, 998 (7th Cir.2013) (quoting 42 U.S.C. § 2000e–3(a)). To survive summary judgment on a Title VII retaliation claim under the direct method of proof, a plaintiff must submit evidence from which a jury could reasonably conclude that (1) [she] engaged in statutorily protected activity; (2) [she] suffered a material adverse action; and (3) a causal link between the two. *See Porter v. City of Chi.*, 700 F.3d 944, 957 (7th Cir.2012). Title VII retaliation claims "require traditional but-for causation, not a lesser 'motivating factor' standard of causation." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir.2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013)). *See also Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014).

Allen's retaliation claim fails because she fails to identify a materially adverse action or that any action by Ford was causally linked to her complaints. Allen's contention that she was outed as a complainer by the Labor Affairs Manager and UAW Chairman is supported only by hearsay statements. Allen's response to Ford's arguments regarding her retaliation claim are otherwise undeveloped. *See Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 925 (7th Cir. 2019) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered). Therefore, Ford is granted summary judgment on this claim (Count 2).

## V.    Assault

Finally, the Court agrees with Ford that the assault claim is preempted. The Illinois Workers' Compensation Act preempts the assault claim because the Act bars employees from "suing an employer for a co-employee's intentional torts when the employer 'did not direct or expressly authorize the employee to commit' the intentional tort." *Carroll v. YMCA of Metro Chicago, LLC*, No. 13-cv-9307, 2015 WL 149024 at *4 (N.D. Ill. Jan. 9, 2015) (quoting *Meerbrey v. Marshall Field & Co. Inc.*, 564 N.E.2d 1222, 1226 (Ill. 1990).

Allen has failed to respond to Ford's argument on this issue, waiving any response. *See Rozumalski*, 937 F.3d at 925. Allen's contention that she sought worker's compensation for the alleged assault is not relevant and does not create an issue of fact that Ford is liable for assault. Summary judgment is granted to Ford on this claim as well.

## CONCLUSION

For the stated reasons, Defendant's motion for summary judgment [79] is granted. The Clerk is directed to enter judgment in Defendant's favor and against Plaintiff and terminate the case.

E N T E R:

Dated: September 8, 2023

_____
MARY M. ROWLAND
United States District Judge

11

## <u>CERTIFICATE OF SERVICE</u>

I, Helen Allen, hereby certify that the foregoing document has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on October 11, 2023, upon all registered Counsel of Record, and has been transmitted to the Clerk of the Court.

Respectfully Submitted By:


/s/ Helen Allen
**Helen Allen**



Dated on this 11<u>th</u> day of October, 2023.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, Appellant, Helen Allen, furnishes the following in compliance with F.R.A.P Rule 32(a)(7):

I, Helen Allen, Appellant, hereby certify that this Brief conforms to the rules contained in F.R.A.P Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is *<u>7075</u>* words.

Respectfully Submitted By:

/s/ Helen Allen
Helen Allen
9530 Pineview Road
Suffolk, Virginia 23437
Appellant, *Pro Se*

Dated on this <u>11</u><sup>th</sup> day of October, 2023.