No. 23-2969

# In the United States Court of Appeals for the Seventh Circuit

---

HELEN ALLEN,

*Plaintiff-Appellant,*

v.

FORD MOTOR COMPANY,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:21-cv-962 – Hon. Mary M. Rowland

---

## BRIEF FOR DEFENDANT-APPELLEE FORD MOTOR COMPANY

---

Katherine V.A. Smith
*Counsel of Record*

Blaine H. Evanson
Michael A. Jaskiw
GIBSON, DUNN & CRUTCHER LLP

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
ksmith@gibsondunn.com

*Counsel for Defendant-Appellee Ford Motor Company*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-2969</u>

Short Caption: <u>Helen Allen v. Ford Motor Co.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Ford Motor Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gibson, Dunn & Crutcher, LLP, Berkowitz Oliver LLP, ArentFox Schiff LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Ford Motor Company states that it has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: <u>/s/ Katherine V.A. Smith</u>    Date: <u>November 29, 2023</u>

Attorney's Printed Name: <u>Katherine V.A. Smith</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☑  **No** ☐

Address: <u>GIBSON, DUNN & CRUTCHER LLP, 333 South Grand Avenue Los Angeles, CA 90071</u>

Phone Number: <u>(213) 229 7000</u>    Fax Number: <u>(213) 229-7520</u>

E-Mail Address: <u>ksmith@gibsondunn.com</u>

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2969

Short Caption: Helen Allen v. Ford Motor Co.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Ford Motor Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Gibson, Dunn & Crutcher, LLP, Berkowitz Oliver LLP, ArentFox Schiff LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Ford Motor Company states that it has no parent corporation.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Blaine H. Evanson    Date: November 29, 2023

Attorney's Printed Name: Blaine H. Evanson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✓]

Address: GIBSON, DUNN & CRUTCHER LLP, 3161 Michelson Drive Suite 1200, Irvine, CA 92612

Phone Number: (949) 451-3805    Fax Number: (949) 475-4768

E-Mail Address: bevanson@gibsondunn.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2969

Short Caption: Helen Allen v. Ford Motor Co.

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Ford Motor Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gibson, Dunn & Crutcher, LLP, Berkowitz Oliver LLP, ArentFox Schiff LLP

(3)     If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

        Ford Motor Company states that it has no parent corporation.

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Michael A. Jaskiw      Date: November 29, 2023

Attorney's Printed Name: Michael A. Jaskiw

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address: GIBSON, DUNN & CRUTCHER LLP, 1050 Connecticut Avenue, N.W., Washington, DC 20036

Phone Number: (202) 955-8298      Fax Number: (202) 530-9564

E-Mail Address: mjaskiw@gibsondunn.com

rev. 12/19 AK

# Table of Contents

Page(s)

STATEMENT CONCERNING ORAL ARGUMENT .................................................... 1

INTRODUCTION ................................................................................................ 1

JURISDICTIONAL STATEMENT .......................................................................... 2

STATEMENT OF THE ISSUES .............................................................................. 3

STATEMENT OF THE CASE.................................................................................. 3

I.     Over Four Years, Ford Investigates Allen's Many Complaints Of
       "Harassment," "Discrimination," And "Retaliation".......................................... 4

II.    Allen Sues Ford As Part Of A Putative Class Action, Then Pursues
       Individual Claims When Class Certification Fails............................................. 7

III.   The District Court Grants Ford Summary Judgment........................................ 8

SUMMARY OF THE ARGUMENT ........................................................................ 10

STANDARD OF REVIEW .................................................................................... 11

ARGUMENT ...................................................................................................... 11

I.     Allen's "Secondhand" Harassment Claim Fails As A Matter Of Law ........... 12

       A.     The District Court Correctly Concluded That Allen Did Not Suffer
              Severe Or Pervasive Harassment As A Matter Of Law............................ 12

       B.     The District Court Correctly Rejected Allen's Deficient Evidentiary
              Submissions And Her Attempts To Rely On Inadmissible Hearsay........ 18

       C.     The Court Also Can Affirm Because Ford's Thorough
              Investigations Of Allen's Complaints Preclude Liability As A
              Matter Of Law ................................................................................. 21

II.    Allen Suffered No Adverse Employment Actions Because Of Her
       Gender Or Race ................................................................................................ 24

III.   Allen's Claim Is That She Suffered Slights, Not Retaliation, And Allen
       Can Show No Connection Between Them And Her Complaints .................... 26

IV.    Allen Fails To Address The Preemption Of Her Assault Claim Under
       The Illinois Workers' Compensation Act........................................................ 28

CONCLUSION.................................................................................................... 28

# Table of Authorities

Page(s)

## Cases

*Alamo v. Bliss,*
864 F.3d 541 (7th Cir. 2017) ............................................................. 24

*Alexander v. Casino Queen, Inc.,*
739 F.3d 972 (7th Cir. 2014) ............................................................. 17

*Ammons v. Aramark Unif. Servs., Inc.,*
368 F.3d 809 (7th Cir. 2004) ............................................................. 19

*Anderson v. Hardman,*
241 F.3d 544 (7th Cir. 2001) ....................................................... 11, 17

*Baskerville v. Culligan Int'l Co.,*
50 F.3d 428 (7th Cir. 1995) ............................................................... 16

*Baylay v. Etihad Airways P.J.S.C.,*
881 F.3d 1032 (7th Cir. 2018) ........................................................... 28

*Bernier v. Morningstar, Inc.,*
495 F.3d 369 (7th Cir. 2007) ............................................................. 11

*Berry v. Delta Airlines, Inc.,*
260 F.3d 803 (7th Cir. 2001) ............................................................. 18

*Bonte v. U.S. Bank, N.A.,*
624 F.3d 461 (7th Cir. 2010) ......................................... 12, 17, 18, 20

*Boss v. Castro,*
816 F.3d 910 (7th Cir. 2016) ....................................................... 25, 26

*Burton v. Kohn L. Firm, S.C.,*
934 F.3d 572 (7th Cir. 2019) ............................................................. 20

*Cerros v. Steel Techs., Inc.,*
398 F.3d 944 (7th Cir. 2005) ..................................................... 10, 22, 23

*Coleman v. Donahoe,*
667 F.3d 835 (7th Cir. 2012) ............................................................. 25

*Collins v. Kibort,*
143 F.3d 331 (7th Cir. 1998) ............................................................. 15

*Cooper-Schut v. Visteon Auto. Sys.,*
361 F.3d 421 (7th Cir. 2004) ....................................................... 21, 23

*Dandy v. United Parcel Serv., Inc.,*
388 F.3d 263 (7th Cir. 2004) ............................................................. 16

**Table of Authorities**

(*continued*)

Page(s)

*Dey v. Colt Constr. & Dev. Co.*,
   28 F.3d 1446 (7th Cir. 1994) ................................................................. 27

*Durkin v. City of Chi.*,
   341 F.3d 606 (7th Cir. 2003) ......................................................... 16, 24

*Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*,
   515 F.3d 718 (7th Cir. 2008) ................................................................. 20

*EEOC v. Mgmt. Hosp. of Racine, Inc.*,
   666 F.3d 422 (7th Cir. 2012) ......................................................... 21, 22

*Grant v. Trustees of Indiana Univ.*,
   870 F.3d 562 (7th Cir. 2017) ................................................................. 10

*Greer v. Bd. of Educ. of City of Chi., Ill.*,
   267 F.3d 723 (7th Cir. 2001) ......................................................... 18, 19

*Guerrero v. BNSF Ry. Co.*,
   929 F.3d 926 (7th Cir. 2019) ......................................................... 11, 21

*Gunville v. Walker*,
   583 F.3d 979 (7th Cir. 2009) ................................................................. 19

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993) ......................................................................... 13, 17

*Hill v. Potter*,
   625 F.3d 998 (7th Cir. 2010) ................................................................. 26

*Hilt–Dyson v. City of Chi.*,
   282 F.3d 456 (7th Cir. 2002) ................................................................. 16

*Howard v. Cook Cnty. Sheriff's Off.*,
   989 F.3d 587 (7th Cir. 2021) ................................................................. 13

*Igasaki v. Illinois Dep't of Fin. & Prof'l. Reg.*,
   988 F.3d 948 (7th Cir. 2021) ................................................................. 25

*Johnson v. Advoc. Health & Hosps. Corp.*,
   892 F.3d 887 (7th Cir. 2018) ......................................................... 10, 24

*Klein v. O'Brien*,
   884 F.3d 754 (7th Cir. 2018) ......................................................... 27, 28

*Lesiv v. Illinois Cent. R.R. Co.*,
   39 F.4th 903 (7th Cir. 2022) ......................................................... 26, 27

*Liu v. Cook Cnty.*,
   817 F.3d 307 (7th Cir. 2016) ................................................................. 21

## Table of Authorities
*(continued)*

Page(s)

*Mahran v. Advoc. Christ Med. Ctr.,*
12 F.4th 708 (7th Cir. 2021) ............................................ 15, 16, 20, 24

*McCurry v. Kenco Logistics Servs., LLC,*
942 F.3d 783 (7th Cir. 2019) ............................................ 19

*Meerbrey v. Marshall Field & Co., Inc.,*
564 N.E.2d 1222 (Ill. 1990) ............................................ 28

*Nat'l R.R. Passenger Corp. v. Morgan,*
536 U.S. 101 (2002) ............................................ 13

*Nichols v. Mich. City Plant Planning Dep't,*
755 F.3d 594 (7th Cir. 2014) ............................................ 12, 13

*Oncale v. Sundowner Offshore Servs., Inc.,*
523 U.S. 75 (1998) ............................................ 10, 12, 14, 15, 17

*Ortiz v. Werner Enters., Inc.,*
834 F.3d 760 (7th Cir. 2016) ............................................ 24

*Paschall v. Tube Processing Corp.,*
28 F.4th 805 (7th Cir. 2022) ............................................ 13, 14, 17, 21, 22, 26

*Patt v. Family Health Sys., Inc.,*
280 F.3d 749 (7th Cir. 2002) ............................................ 16

*Porter v. City of Chi.,*
700 F.3d 944 (7th Cir. 2012) ............................................ 14, 16, 26

*Puffer v. Allstate Ins. Co.,*
675 F.3d 709 (7th Cir. 2012) ............................................ 18, 20, 21, 28

*Roby v. CWI Inc.,*
579 F.3d 779 (7th Cir. 2009) ............................................ 22

*Scott v. Harris,*
550 U.S. 372 (2007) ............................................ 23

*Scruggs v. Garst Seed Co.,*
587 F.3d 832 (7th Cir. 2009) ............................................ 16

*Shipley v. Chi. Bd. Of Election Comm'rs,*
947 F.3d 1056 (7th Cir. 2020) ............................................ 17

*Smith v. Illinois Dep't of Transp.,*
936 F.3d 554 (7th Cir. 2019) ............................................ 14

*Smith v. Sheahan,*
189 F.3d 529 (7th Cir. 1999) ............................................ 13

iv

## Table of Authorities
*(continued)*

Page(s)

*Tomanovich v. City of Indianapolis*,
    457 F.3d 656 (7th Cir. 2006) ............................................................ 27

*Van, et. al., v. Ford Motor Co.*,
    Case No. 1:14-cv-08708 (N.D. Ill. Aug. 3, 2023) ............................ 8

*Wyninger v. New Venture Gear, Inc.*,
    361 F.3d 965 (7th Cir. 2004) ............................................................ 23

*Yancick v. Hanna Steel Corp.*,
    653 F.3d 532 (7th Cir. 2011) ...................................................... 13, 23

*Zimmerman v. Cook Cnty. Sheriff's Dept.*,
    96 F.3d 1017 (7th Cir. 1996) ............................................................ 23

*Zoretic v. Darage*,
    832 F.3d 639 (7th Cir. 2016) ............................................................ 19

### Statutes

28 U.S.C. § 1291 .................................................................................... 3

28 U.S.C. § 1331 .................................................................................... 2

28 U.S.C. § 1367 .................................................................................... 2

42 U.S.C. § 1981 .................................................................................... 2

### Other Authorities

Fed. R. Evid. 807(a)(1)-(2) ................................................................ 21

### Rules

Fed. R. App. P. 4(a)(1)(A) .................................................................. 3

Fed. R. App. P. 28(a)(6) ...................................................................... 3

Fed. R. App. P. 28(a)(9)(A) ................................................................ 11

Fed. R. App. P.  28(b) .......................................................................... 4

## STATEMENT CONCERNING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Seventh Circuit Rule 34(f), Defendant-Appellee Ford Motor Company respectfully submits that oral argument is not necessary to the Court's resolution of this appeal, given the district court's clear, thorough, and correct resolution of the issues below. However, counsel would be pleased to appear for oral argument if it would be helpful to the Court.

## INTRODUCTION

Plaintiff-Appellant Helen Allen has been pursuing claims against Ford, her former employer, since 2014. She had nearly *ten years* to develop evidence that could carry her claims past summary judgment. She failed to do so. The district court thus entered summary judgment for Ford, and this Court should affirm.

Allen brought claims for harassment, discrimination, retaliation, and assault arising out of her four-year tenure at Ford's Chicago Assembly Plant ("CAP"). The district court correctly rejected all of these claims after an exhaustive review of the record, which showed that Ford properly investigated Allen's frequent and often trivial complaints. No reasonable jury could have found that Allen suffered actionable harassment, discrimination, or retaliation. Allen does not engage with the district court's well-reasoned conclusions, let alone show any were reached in error.

First, it is undisputed that Allen "d[id] not allege any sexually or racially harassing conduct or comments directed *towards her*." Dkt. 116 at 9 (emphasis in original).[1] And the "secondhand" harassment that Allen claims she experienced was

---

[1] The record on appeal, which is the district court docket, is cited as "Dkt. ___ at ___." Plaintiff-Appellant's brief is cited as "Br. at ___."

neither frequent nor serious enough to be actionable.  Second, Allen adduced no evidence that her gender or race *caused* her to suffer an adverse employment action, thus dooming her discrimination claims.  Third, Allen's retaliation claim fails both for lack of a materially adverse action, *and* for lack of any plausible connection between any such action and her complaints.  Fourth, the Illinois Workers' Compensation Act clearly preempts Allen's assault claim.

The Court should therefore affirm the district court's grant of summary judgment to Ford on all of Allen's claims.

## JURISDICTIONAL STATEMENT

Allen's jurisdictional statement is neither complete nor correct.  Ford therefore submits this jurisdictional statement pursuant to Circuit Rule 28(b).

In her operative complaint, Allen asserted five claims against Ford.  Dkt. 73. The district court had federal question jurisdiction over four of them.  28 U.S.C. § 1331.  Allen brought three claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, namely gender discrimination/sexual harassment; retaliation; and race discrimination/harassment.  Allen also brought a race discrimination claim under 42 U.S.C. § 1981.  The district court had supplemental jurisdiction over Allen's fifth and final claim for assault.  28 U.S.C. § 1367.  Allen also reasserted a previously-dismissed claim for intentional infliction of emotional distress.  *See* Dkt. 73 at ¶¶ 71-74.  Since that claim had already been dismissed, Dkt. 62 at 2, the district court did not consider it in ruling on summary judgment, Dkt. 116 at 7 n.3.  Allen does not raise this claim on appeal.

On September 8, 2023, the district court granted Ford's motion for summary judgment, Dkt. 116, and entered final judgment for Ford, Dkt. 117.

On October 2, 2023, Allen submitted a notice of appeal, Dkt. 119, which was timely as it was filed within 30 days of the entry of judgment, Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction to review the district court's final judgment.  28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether the district court correctly entered summary judgment on Allen's sexual and racial harassment claims where Allen merely *overheard* a handful of offensive comments over four years, but experienced no sexual or racial harassment directed *at her*.

2.     Whether the district court correctly entered summary judgment on Allen's gender and race discrimination claims where Allen offered scant evidence of any adverse employment actions and *no* evidence connecting such actions to her gender or race.

3.     Whether the district court correctly entered summary judgment on Allen's retaliation claim where Allen alleged only trivial acts of purported retaliation, and did not show those acts were connected to her alleged protected activity.

4.     Whether the district court correctly found that the Illinois Workers' Compensation Act preempted Allen's common-law assault claim.

## STATEMENT OF THE CASE

Allen's Statement of the Case and Statement of Facts do not cite the record and are thus procedurally deficient.  *See* Fed. R. App. P. 28(a)(6).  Both Statements are

mostly cut and pasted from the order granting Ford summary judgment. *Compare* Br. at 10-16, *with* Dkt. 116 at 2-7.[2] Ford thus submits its own Statement of the Case. Fed. R. App. P. 28(b).

## I.    Over Four Years, Ford Investigates Allen's Many Complaints Of "Harassment," "Discrimination," And "Retaliation"

Allen worked for Ford from 2000 to 2020. Dkt. 116 at 3. As relevant here, she worked as an hourly plumber/pipefitter at CAP from January 2012 until August 2016. *Id.* Allen was trained on Ford's Anti-Harassment Policy and frequently used the various avenues it provides for employees to report concerns. *Id.* at 3-7. At CAP, Human Resources ("HR") representatives for hourly employees like Allen work in a department called Labor Relations and investigate employee complaints. *Id.* at 3.

### A.  Allen Makes Sporadic Complaints In 2012 And 2013

In 2012, Allen alleged her supervisor was "discriminating" against her because she was "a [B]lack, [M]uslim female." Dkt. 116 at 4. Allen maintains that *all* physical contact between unmarried members of the opposite sex—including handshakes—is offensive and inappropriate. Dkt. 81 at ¶ 4. Allen, however, brought no religious discrimination claim in this case. *See* Dkt. 62 at 3; Dkt. 73. Labor Relations asked Allen *how* she was being discriminated against, but Allen could not "pinpoint" *anything* in support. Dkt. 116 at 4. She admitted "[i]t's just a feeling that may not

---

[2] Allen in places revises and embellishes the district court's language. *Compare* Br. at 11 ("Subsequently, the Appellant transferred to a different Ford facility located in Ohio where she was compelled to retire due to medical reasons in August 2020."), *with* Dkt. 116 at 3 ("Allen then transferred to another Ford facility in Ohio, where she took a medical retirement in August 2020.") (citing Ford's statement of facts, Dkt. 81 at ¶ 7). In other instances, sentences are repeated verbatim. *Compare* Br. at 16 ("In 2016, Allen spent just three months working at CAP before transferring to another Ford facility."), *with* Dkt. 116 at 7 (same).

be accurate," and that the supervisor was "harsh" with everyone. *Id.* Ford therefore closed this complaint. *Id.*

In 2013, Allen filed an EEOC Charge, alleging she was subjected to unspecified retaliation, had twice been disciplined unfairly because of her race, and had been denied an unidentified religious accommodation. *Id.* The Charge did not mention any racial or sexual harassment. *Id.* Later that year, Allen emailed CAP's plant manager, complaining generally about hearing "foul language" without identifying what she heard, from whom, or when. *Id.* Allen also claimed her lunch breaks were being interrupted and that this constituted race discrimination. *Id.* Finally, Allen complained that a security contractor swore at her after Allen accidentally flooded part of the plant. *Id.* Ford interviewed the security contractor, who denied swearing at Allen. *Id.*

### B. Allen First Complains Of Sexual Harassment In 2014

In early 2014, Allen complained that she heard "sex talk" at CAP on a purportedly daily basis, but could only name four such incidents when pressed for specifics. *Id.* at 5. She alleged hearing one utterance of the phrase "What the f\*\*\*"; a comment that another employee had a "small weenie"; a comment that an employee "sucks and swallows"; and an offensive joke Allen could not actually remember. *Id.*

Ford investigated all four alleged incidents and substantiated one, suspending a coworker whom Allen overheard tell an offensive joke. *Id.* Allen also gave Labor Relations a "chronology" with all the times she had allegedly overheard offensive language over the preceding two years. *Id.* Allen listed six instances, but she could not name or otherwise identify the coworkers she overheard using offensive language

5

in any of the six.  *Id.*  Unable to locate these individuals, Ford could not investigate further.  *Id.*

Allen also complained about a case of phallic graffiti at the plant.  *Id.*  Allen actually *went looking* for the graffiti: it was already covered up when she arrived, so she asked a coworker to send her a picture of it.  *Id.*  An investigation did not identify who had placed the graffiti.  *Id.*

Allen next complained when a male employee walked into a bathroom Allen was preparing to work on.  *Id.*  Allen, still outside the bathroom, told the employee not to enter, but he did anyway.  *Id.*  The incident was investigated and closed.  *Id.*  When interviewed about that incident, Allen additionally claimed that at some point the year before, an unnamed male had accidentally "flashed" Allen—and then apologized to her—when he entered a restroom not knowing Allen was in it.  *Id.*

Allen also claimed that she had twice been "outed" as a complainant.  *Id.* at 6.  In one case, Allen heard *secondhand* that an employee told others to be "careful" around Allen because she was going to sue Ford.  *Id.*  In the other, Allen complained that her local union chairman told members assembled at a meeting that the union (not Ford) would investigate one of Allen's complaints.  *Id.*

Allen also complained she got into an argument with an engineer after refusing an assignment from him.  *Id.*  Allen claimed the engineer had unspecified "issues" with women and minorities, and purported to know this because "they told me."  *Id.*  Ford closed this complaint.  *Id.*  Allen also complained about a coworker wearing capri pants to work.  *Id.*  Afterward, she alleged that a supervisor had asked her why she

was on her phone at work *because* she had complained about her coworker's capri pants. *Id.* Ford again investigated, but did not find any evidence of retaliation. *Id.*

### C. In 2015, Allen Continues To Complain Of Harassment And Retaliation From Both Male And Female Coworkers

In February 2015, Allen complained to Labor Relations that, based on secondhand knowledge, a team manager was allegedly mistreating two *other* women. Dkt. 116 at 6. Labor Relations later told Allen it had investigated the matter. *Id.*

Allen next claimed that it constituted "harassment" that a male coworker who apparently did not want to work with her was "allowed" to come to work. *Id.* Allen was told she had to share her work area with other employees. *Id.* at 7. Allen also claimed it was "retaliation" that this coworker got overtime she thought she should have received. *Id.* at 6-7. But the two had different jobs and thus different overtime eligibility. *Id.* at 7.

Allen also made complaints about a female coworker, alleging this coworker was "known to grab men[]" and "hug" them, which Allen found objectionable. *Id.* Allen claimed the coworker purportedly said, "I will f*** a bitch up, male or female." *Id.* That coworker was suspended after she approached Allen and a male coworker, told them both to "get the f*** out" of an area, and said "f*** you bitch" to Allen. *Id.*

Allen made no complaints during her brief time at CAP in 2016. *Id.*

### II. Allen Sues Ford As Part Of A Putative Class Action, Then Pursues Individual Claims When Class Certification Fails

In November 2014, Allen filed suit as a lead plaintiff seeking to certify a class of women at CAP and another Ford facility who claimed to have been subjected to sexual harassment. Dkt. 116 at 7. The district court denied two attempts to certify

that class. *Id.* Afterwards, in 2019, Allen severed her claims from those of her co-plaintiffs and proceeded to litigate on an individual basis. *Id.*

Proceeding on her own, Allen brought five claims in district court: (i) gender discrimination and sexual harassment under Title VII; (ii) retaliation under Title VII; (iii) race discrimination and racial harassment under Title VII; (iv) race discrimination under Section 1981; and (v) assault. Dkt. 73. Ford deposed Allen once in 2017 during class litigation, and once in 2022 when Allen was pursuing her individual claims. Dkt. 81 at ¶¶ 9, 12.

Allen has retained and then terminated three sets of lawyers over the course of the litigation and has been sanctioned for misconduct. Dkt. 37 at 1, 3-4; Dkt. 58. In April 2022, the Hon. Mary M. Rowland sanctioned and fined Allen for sending "offensive emails to Judge [Jefferey] Cummings and opposing counsel, using racially-charged, sexist and degrading language and ma[king] insulting accusations against both Judge Cummings and opposing counsel." Dkt. 37 at 3.[3]

## III.    The District Court Grants Ford Summary Judgment

Ford moved for summary judgment on all of Allen's claims on February 3, 2023.

---

[3] Ford sought, but Judge Rowland declined to enter, case-terminating sanctions for this conduct. Judge Rowland cited the fact that Allen had "retained counsel shortly after Ford filed its sanctions motion." Dkt. 37 at 3. But Allen subsequently fired *that* counsel, too. *Pro se* once again, Allen filed a motion in July 2023 before Judge Pacold in the case from which her individual claims had been severed. Allen demanded sealed transcripts that she claimed were relevant to her accusations against Judge Cummings and counsel. Judge Pacold denied that request and admonished Allen, concluding: "Allen has engaged in repeated litigation misconduct before multiple judges and has been sanctioned for it, yet continues to persist in the same frivolous allegations." *Van, et. al., v. Ford Motor Co.*, Case No. 1:14-cv-08708 (N.D. Ill. Aug. 3, 2023), Dkt 704 at 2.

Dkt. 79. Ford submitted a 116-paragraph statement of facts with 55 supporting exhibits. Dkts. 81, 81-1. As Northern District of Illinois Local Rule 56.2 requires, Ford also served a notice on Allen that explained how *pro se* litigants should oppose summary judgment. Dkt. 84.

On March 17, 2023, Allen submitted a skeletal brief in opposition to Ford's motion. Dkt. 88. Allen filed what she styled as a response to Ford's statement of facts, her own statement of facts, and 1,050 pages of exhibits. On April 17, 2023, Ford submitted a reply that pointed out the deficiencies in Allen's submissions. Dkt. 112.

On September 8, 2023, the district court granted Ford summary judgment in an 11-page order. Dkt. 116. At the outset, the district court found that all of Allen's evidentiary submissions failed to comply with Local Rule 56.1. While "mindful" that Allen was *pro se*, the district court was "not obligated to sift through hundreds of pages of documents" in search of arguments in Allen's favor. *Id.* at 3. It therefore declined to consider Allen's evidentiary submissions, and instead "deem[ed] all the facts in Ford's statement of facts admitted." *Id.* The district court also agreed with Ford that Allen's claims—in particular her harassment claims—were premised on inadmissible hearsay that could not be considered at summary judgment. *Id.* at 8.

The district court concluded that the record contained no evidence of severe or pervasive sexual or racial harassment. *Id.* at 8-9. Crucially, Allen "d[id] not allege any sexually or racially harassing conduct or comments directed *towards her*." *Id.* at 9 (emphasis in original). As to alleged race and gender discrimination, the district court found that Allen had failed to put forth triable evidence that she (i) suffered an adverse employment action, *or* (ii) experienced any adverse action because of her

9

gender or race.  *Id.*  Allen's retaliation claim failed for similar reasons, as no reasonable jury could find that she experienced a materially adverse action, *or* that her complaints caused one.  *Id.* at 10.  Last, the district court agreed that the Illinois Workers' Compensation Act preempted Allen's assault claim.  *Id.* at 10-11.

## SUMMARY OF THE ARGUMENT

After nine years of litigation, Allen's burden in response to Ford's summary judgment motion was to "identify[] specific, admissible evidence showing that there [wa]s a genuine dispute of material fact for trial."  *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).  Because Allen failed to do so, the district court correctly entered summary judgment for Ford.  The Court should affirm the entry of judgment for Ford on all of Allen's claims.

First, Allen's sexual and racial harassment claims could not withstand summary judgment because they are built entirely on a handful of comments she purportedly *overheard*.  The sum total of that conduct falls far short of severe or pervasive harassment as a matter of law.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).  In addition, Ford methodically addressed Allen's legion of complaints whenever she raised them:  that precludes Ford's liability even *if* Allen could prove she endured a hostile work environment (she cannot).  *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 953 (7th Cir. 2005).

Second, Allen's discrimination claims also fail, as there is no evidence she suffered an adverse employment action *because of* her gender or race.  *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018).  Allen instead

complains of conduct like "micromanagement" that is not materially adverse, or minor discipline that she concedes was meted out to both white men and Black women alike.

Third, Allen cannot get to a jury on her retaliation claim, as she complains of conduct that is both too trivial to be actionable and not even plausibly tied to her allegedly protected complaints.

Fourth and finally, Allen simply ignores—and thus concedes—the district court's finding that state law preempts her assault claim.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's decision to grant Ford summary judgment, *Bernier v. Morningstar, Inc.*, 495 F.3d 369, 372 (7th Cir. 2007), and can affirm that decision based on any reason with adequate support in the record, *Guerrero v. BNSF Ry. Co.*, 929 F.3d 926, 931 (7th Cir. 2019).

## ARGUMENT

The district court correctly rejected Allen's claims on summary judgment, and she presents nothing on appeal that comes close to warranting reversal.[4]

---

[4] Ford is mindful that *pro se* pleadings "are to be liberally construed." *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). But Allen's brief has only a few sentences that even *appear* to be arguments, none of which cite the record. Instead, most of her brief is cut-and-pasted directly from the district court's order granting summary judgment to Ford. It thus includes explanations of why her claims *fail* as a matter of law. *Compare* Br. at 23 ("These actions do not rise to the level of a materially adverse employment action."), *with* Dkt. 116 at 9 (same). Ford addresses the arguments it can identify in Allen's brief. But even "a pro se litigant" must offer "an argument consisting of more than a generalized assertion of error, with citations to supporting authority." *Anderson*, 241 F.3d at 545 (citing Fed. R. App. P. 28(a)(9)(A)). Even read charitably, Allen's brief fails to meet this standard. The Court could dismiss the appeal on this ground alone. *Id.*

I.    **Allen's "Secondhand" Harassment Claim Fails As A Matter Of Law**

Allen's sexual and racial harassment claims are cobbled together from a handful of comments that she allegedly overheard over four years, and a few incidents that had no plausible connection to her gender or race.  No jury could find that this conduct constituted severe or pervasive harassment.  *Oncale*, 523 U.S. at 80.  Allen offered no evidence of her own to the contrary.  Allen's evidentiary submissions were woefully deficient under the Local Rules, and the district court correctly rejected her attempt to rely on conduct that she had only heard *about*, but never actually witnessed herself.  Finally, the record showed that Ford exhaustively investigated all of Allen's complaints, thus providing another independent reason to affirm summary judgment on Allen's harassment claims.

A. **The District Court Correctly Concluded That Allen Did Not Suffer Severe Or Pervasive Harassment As A Matter Of Law**

At deposition, Allen testified that she never experienced *any* unwanted sexual touching, comments, stares, or advances at CAP.  Dkt. 81 at ¶ 94.  No racial epithets or comments were ever directed at her, *id.* at ¶ 107, and Allen does not even appear to allege that she experienced any racially harassing *conduct*.  The district court thus concluded:  "Allen does not allege any sexually or racially harassing conduct or comments directed *towards her*."  Dkt. 116 at 9 (emphasis in original).  The district court was correct, and on appeal, Allen does not challenge that conclusion—which, again, was based on her *own testimony*.  *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Instead, Allen's claims rely entirely on secondhand harassment, meaning, "harassing statements [] directed at someone other than [her]."  *Nichols v. Mich. City*

*Plant Planning Dep't*, 755 F.3d 594, 602 (7th Cir. 2014) (internal quotation marks omitted). But "the impact of [such] 'second hand harassment' is obviously not as great." *Id.* "[T]he more remote or indirect the act claimed to create a hostile working environment, the more attenuated the inference that it had an effect on the terms and conditions of the plaintiff's workplace." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 545 (7th Cir. 2011). Here, Allen's exposure to secondhand harassment never got close to the "extreme" level needed "to create a hostile work environment." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 600 (7th Cir. 2021).

Allen was required to produce evidence that could convince a reasonable jury that she suffered harassment "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). That is a "totality of the circumstances" determination based on "'(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim.'" *Nichols*, 755 F.3d at 600-01 (citation omitted). Sexual and racial harassment claims "are reviewed under the same standard." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813 (7th Cir. 2022) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002)).

The record indicates that Allen had a host of workplace disputes and interactions she viewed as unpleasant. But sexual harassment is "objectionable workplace behavior [] based on the sex of the target," *Smith v. Sheahan*, 189 F.3d 529,

13

533 (7th Cir. 1999), and racial harassment must be "based on [the target's] race," *Paschall*, 28 F.4th at 814. The conduct also must be "objectively offensive," not simply offensive to Allen. *Porter v. City of Chi.*, 700 F.3d 944, 956 (7th Cir. 2012).

There is no evidence that Allen's workplace disputes occurred *because of* her gender (or her race, which Allen does not even appear to allege). *See* Dkt. 80 at 12-13. Allen offers no record citations to the contrary. A few examples suffice to show this basic deficiency in Allen's harassment claims. For instance, a security contractor allegedly swore at Allen *not* because she was a woman (or Black), but because Allen flooded part of the plant. Dkt. 116 at 4. There is no evidence that a *female* coworker— who told Allen that she would "f\*\*\* a bitch up, *male or female*"—threatened Allen because of Allen's gender (or race). *Id.* at 7 (emphasis added). Allen also alleges that an engineer once told Allen, "What the f\*\*\* [do] you want me to do?" *Id*. at 5. But again, there is no evidence to show that this comment was attributable to either Allen's gender or race. In sum, "the profanity that [Allen] describes does not establish a hostile work environment under Title VII" because Allen "introduced no evidence" that she was "swor[n] at . . . because [s]he was black," or because she was a woman. *Smith v. Illinois Dep't of Transp.*, 936 F.3d 554, 561 (7th Cir. 2019).

Likewise, the offensive conduct that Allen claims to have witnessed fails to support her harassment claims. Allen alleged (long after the incident occurred) that an employee had *accidentally* "flashed" her in a bathroom because he did not know she was there. *Id.* at 5. Of course, if the employee's "flash[ing]" of Allen was a mere accident, it could not possibly have been *based on* her gender or race. *Oncale*, 523 U.S. at 80. Allen also alleges that she purportedly saw *women* touching *men* in a

manner that Allen thought was inappropriate.  Dkt. 81 at ¶¶ 88, 101.  But this, too, does not help Allen show *she* was subjected to harassment based on *her* gender.  *See Oncale*, 523 U.S. at 80.

Allen also often complained of conduct that was not *objectively* offensive.  Allen saw other employees hugging each other, and had to work *near* an employee whom Allen thought did not like her.  Dkt. 116 at 6-7, 8.  That is conduct that "no reasonable person could find . . . hostile or abusive," *Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 715 (7th Cir. 2021), and therefore cannot support a harassment claim.

Thus, even with inferences drawn in her favor, the record does not contain evidence sufficient for a reasonable jury to find Allen experienced actionable sexual harassment:  Allen herself testified that she experienced *no* unwanted sexual touching, comments, stares, or advances.  Dkt. 81 at ¶ 94.  Allen allegedly overheard sexual comments on a handful of occasions and objected to other employees engaging "in physical contact such as hugging." Dkt. 116 at 8.  By Ford's count, Allen overheard sexual comments *at most* 11 times in *four years*, with none directed *at* her.  *See* Dkt. 80 at 20-21.  This includes the six conversations that Allen purportedly overheard between 2012 and 2013.  The only evidence of them is a self-styled "chronology" that Allen gave Labor Relations in 2014.  As Ford argued in district court, that document itself is inadmissible hearsay, leaving Allen with no evidence at summary judgment that those conversations even occurred.  *Id.* at 21 n.6 (citing *Collins v. Kibort*, 143 F.3d 331, 338 (7th Cir. 1998) ("employee's 'diary' was inadmissible hearsay in Title VII discrimination case")).

The precedents finding such conduct to fall short of a hostile work environment are too numerous to catalog here. But the law is clear: "isolated, offhand comments— not directed at [Allen] [her]self—do not amount to an objectively hostile work environment." *Mahran*, 12 F.4th at 716 (citing *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271-72 (7th Cir. 2004)). This Court has uniformly found far more serious allegations to be insufficiently severe or pervasive as a matter of law. *See, e.g.*, *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 841 (7th Cir. 2009) ("inappropriate comments, including that [the plaintiff] was 'made for the back seat of a car' and looked like a 'dyke'" were "not objectively severe or pervasive"); *Hilt–Dyson v. City of Chi.*, 282 F.3d 456, 463-64 (7th Cir. 2002) (supervisor twice touching the plaintiff was insufficient); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (eight gender-related comments over several years, including ones made to the plaintiff, were insufficient); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (nine offensive comments over seven months, all made to or about the plaintiff, were insufficient).

Allen is left with evidence of "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." *Id.* at 431. That is the paradigmatic case of "a merely unpleasant working environment," *not* "a hostile or deeply repugnant one" that is actionable under Title VII. *Id.* At most, the "totality of the circumstances reveals boorish conduct and unexplained animosities toward [Allen], but not to the extent that it meets the legal requirements of Title VII." *Durkin v. City of Chi.*, 341 F.3d 606, 613 (7th Cir. 2003). Allen's "vague and conclusory allegations of being 'harassed' and 'intimidated'" do not allow a reasonable jury to find "objectively offensive, severe, or pervasive" conduct. *Porter*, 700 F.3d at 956.

16

Allen's racial harassment claim is even weaker than her sexual harassment claim. Allen had to put forth evidence that the "complained-of conduct" has "racial character or purpose" for it be cognizable as racial harassment under Title VII. *Paschall*, 28 F.4th at 814 (granting summary judgment on racial harassment claim). But there is no record evidence that *any* objectionable conduct was directed *at* Allen based on her *race*. Ford argued this point on summary judgment, Dkt. 80 at 19-20, to which Allen failed to respond and thus concedes, *Bonte*, 624 F.3d at 466. Allen had to marshal evidence of racial harassment so serious that it "alter[ed] the conditions of [her] employment and create[d] an abusive working environment." *Harris*, 510 U.S. at 21 (internal quotation marks omitted). That is a high bar: this Court has affirmed summary judgment where the plaintiffs introduce "serious" allegations, but nonetheless fail to show their work environment was "physically threatening" or "openly racist." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). Allen does not even try to explain how she could meet this demanding standard. And she cannot count on the Court to "craft[] arguments and perform[] the necessary legal research" for her. *Anderson*, 241 F.3d at 545-46.

Allen offers *one* sentence with any semblance of a factual argument in support of both of her harassment claims. Without any citations to the record, Allen asserts that her "hostile work environment [claims] depend on . . . profane speech, back biting, leg pulling, indecent gossip, and passive aggression" that made her "feel uncomfortable." Br. at 22. That is too threadbare to constitute an argument, *Shipley v. Chi. Bd. Of Election Comm'rs*, 947 F.3d 1056, at 1063 (7th Cir. 2020), and describes the very conduct Title VII does *not* police in the workplace, *Oncale*, 523 U.S. at 81.

17

Title VII prohibits "only workplace discrimination," not "all boorish or even all harassing conduct." *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 808 (7th Cir. 2001).

## B. The District Court Correctly Rejected Allen's Deficient Evidentiary Submissions And Her Attempts To Rely On Inadmissible Hearsay

Allen makes the vague claim that the district courted erred by not "giving due weight to the evidence [of harassment] presented by Appellant." Br. at 20. But the district court correctly declined to consider Allen's evidentiary submissions, and found that Allen could not rely on inadmissible hearsay to defeat Ford's properly-supported motion for summary judgment. Dkt. 116 at 3-4, 7-8. Allen does not address the first ruling, and has waived her objections to the second. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Both rulings were also correct.

### 1. The District Court Properly Ignored Allen's Evidentiary Submissions Due To Their Noncompliance With Local Rule 56.1

Local Rule 56.1 required Allen "to admit or deny each factual statement proffered by [Ford] and to designate with specificity and particularity those material facts believed to establish a genuine dispute for trial." *Greer v. Bd. of Educ. of City of Chi., Ill.*, 267 F.3d 723, 727 (7th Cir. 2001). In her submissions, Allen failed to respond to Ford's statement of facts, failed to cite the record, and relied on over 1,000 pages of duplicative and improperly-cited exhibits. Dkt. 116 at 2-3. The district court correctly declined to consider these materials, and instead "deem[ed] all the facts in Ford's statement of facts admitted." *Id.* at 3. Allen does not even *acknowledge* this ruling, so she waived any objection to it. *See Bonte*, 624 F.3d at 466.

Regardless, the district court's ruling was correct. "[D]istrict judges may strictly enforce local summary-judgment rules, and the judge reasonably did so here."

18

*McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 (7th Cir. 2019) (internal citation omitted). This Court has "repeatedly held that a district court is entitled to expect strict compliance" with Local Rule 56.1 at summary judgment. *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (enforcement of local rules reviewed for abuse of discretion). There is no basis for the Court to disturb the district court's decision to enforce Local Rule 56.1 in this case. *See, e.g.*, *Zoretic v. Darage*, 832 F.3d 639, 641 (7th Cir. 2016) ("like the district court, we rely on the defendants' statements of material facts" because *pro se* plaintiff failed to comply with Local Rule 56.1); *Greer*, 267 F.3d at 727 (because *pro se* plaintiff "failed to comply with Local Rule 56.1," the Court would not play "a game of hunt the peanut" and "scour the record looking for factual disputes") (citation and quotation marks omitted).

## 2. The District Court Appropriately Declined To Consider Inadmissible Hearsay In Support Of Allen's Claims

Allen also pointed to workplace rumors and conduct she only *heard* about as alleged evidence that she endured sexual harassment. Dkt. 116 at 8 (*e.g.*, alleging a woman "was 'known for grabbing' male workers," and that a "supervisor was known to have 'several girlfriends in the building'"). As to racial harassment, Allen claimed that other employees *told her* she was called racial epithets behind her back, but that "no one ever called her these terms to her face." *Id.* The district court found such statements to be inadmissible hearsay, and declined to consider them. *Id.* Because "[a] party may not rely upon inadmissible hearsay to oppose a motion for summary judgment," *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009), this Court should do the same.

*First*, Allen has preserved no argument against the district court's hearsay ruling, so the Court should not revisit it here. *Puffer*, 675 F.3d at 718. At summary judgment, Ford argued that Allen sought to rely on inadmissible hearsay. Dkt. 80 at 9-11. In response, Allen failed to cite the record, the Federal Rules of Evidence, or any case law. Dkt. 88 at 8-9. The district court found Allen simply "d[id] not address" her reliance "on inadmissible hearsay." Dkt. 116 at 8; *see also Bonte*, 624 F.3d at 466.

*Second*, Allen offers only confusing and contradictory assertions about the district court's hearsay ruling on appeal. Read generously, Allen claims that her hearsay statements are admissible under Rule 807's residual exception. *See* Br. at 19-20. But again, that argument is waived because Allen never raised it in district court. *Puffer*, 675 F.3d at 718. Regardless, the argument is "underdeveloped, conclusory, [and] unsupported by law," and is waived on that basis, too. *Id.* Allen appears to argue both sides of the issue: she claims the district court "failed to establish" her statements were hearsay, then also asserts that "the district court gave undue weight to hearsay evidence." Br. at 19. In any event, Allen does not cite to any hearsay in the record, or explain *how* the admissibility of any hearsay evidence could lead to reversal. The Court should not develop this argument for her. *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008).

*Third*, even overlooking waiver, this argument still fails. Rule 807's residual hearsay exception is construed narrowly. *Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 583 (7th Cir. 2019). Allen cannot use it to turn workplace rumors and secondhand information into admissible evidence at summary judgement. *See Mahran*, 12 F.4th at 715 ("the judge correctly excluded" discriminatory statements that the plaintiff

20

claimed he was told about because they were "inadmissible hearsay"). Allen's hearsay statements plainly lack "sufficient guarantees of trustworthiness," and she could have instead substantiated those statements with "other evidence . . . obtain[able] through reasonable efforts," like testimony from witnesses with firsthand knowledge. Fed. R. Evid. 807(a)(1)-(2).

### C. The Court Also Can Affirm Because Ford's Thorough Investigations Of Allen's Complaints Preclude Liability As A Matter Of Law

The district court summarily rejected Allen's sexual and racial harassment claims because she could not have established a hostile work environment. But even if Allen *could* have shown she endured actionable harassment (she cannot), Ford still could not have been found liable because it doggedly investigated and addressed each and every one of Allen's complaints. Dkt. 80 at 23-25. The Court can affirm on this basis as well. *Guerrero*, 929 F.3d at 932; *Paschall*, 28 F.4th at 815 (granting summary judgment on harassment claim because plaintiff "has not demonstrated a basis for employer liability"). Allen did not respond to this argument below and therefore has waived her right to do so now. *Puffer*, 675 F.3d at 718.

An employer is liable for coworker harassment only if it "was negligent in discovering or remedying" it. *Liu v. Cook Cnty.*, 817 F.3d 307, 318 (7th Cir. 2016). "The first step in this inquiry is whether the employer was on notice of the harassment." *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). An employer can avoid liability for a supervisor's harassment if no tangible employment action was taken against the employee, *and* the employer establishes "the *Faragher/Ellerth* affirmative defense." *EEOC v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 434 (7th Cir.

21

2012) (internal quotation marks omitted). The employer can do so if it "exercised reasonable care to prevent and correct promptly" the harassment, and the employee "unreasonably failed to take advantage of any preventive or corrective opportunities . . . or to avoid harm otherwise." *Id.*

Under either standard, Ford cannot be held liable. There is no discernable evidence of sexual or racial harassment that Allen experienced from any supervisor, let alone evidence it culminated in an adverse employment action. The record chronicles Ford's dogged investigation of Allen's complaints—more than demonstrating "reasonable care to prevent and correct" harassment. *Id.* And if Allen *had* any evidence of actionable harassment by a supervisor, she certainly never brought it forward when she worked at CAP. *Roby v. CWI Inc.*, 579 F.3d 779, 786 (7th Cir. 2009) (five-month delay in reporting alleged harassment constitutes unreasonable failure to use corrective opportunities).

Ford also investigated all of Allen's complaints against coworkers, and "took prompt and effective remedial action." *Paschall*, 28 F.4th at 815. On two occasions, Ford substantiated Allen's complaints against her coworkers and suspended them. Dkt. 116 at 5, 7. Those "prompt investigation[s] of the alleged misconduct . . . [are] a hallmark of reasonable corrective action" that preclude liability for it as a matter of law. *Cerros*, 398 F.3d at 954. Indeed, the record does not contain a *single* complaint from Allen that Ford did *not* address. That left Allen to grasp at straws—for instance, when Allen herself *sought out* phallic graffiti to complain about it, Ford had *already* covered it up before she could see it. Dkt. 116 at 5. Ford's remedial actions were

clearly more than "sufficient under the circumstances." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004).

Ford need only show its responses were "reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." *Cerros*, 398 F.3d at 953 (internal quotation marks omitted). Ford's investigations and corrective action easily meet that standard.

Allen did not even complain about sexual harassment until 2014. Dkt. 81 ¶ 35. Allen *never* complained about racially offensive comments or language while she worked at CAP. *Id.* at ¶ 116. Ford thus had no notice of alleged acts of sexual harassment until two years into Allen's tenure at CAP, and *never* had notice of Allen's allegations of racial harassment until after she left CAP. Allen certainly made a bevy of other complaints, covering topics ranging from safety concerns to the availability of feminine products. *Id.* But those complaints did not give Ford a basis to think "that she was being sexually [or racially] harassed." *Zimmerman v. Cook Cnty. Sheriff's Dept.*, 96 F.3d 1017, 1019 (7th Cir. 1996); *see also*, *e.g.*, *Cooper-Schut*, 361 F.3d at 427 (no employer liability where the employee did not "report that she believed [incidents] to be racially or sexually motivated").

*After* she had left the Plant, Allen attempted to expand her harassment allegations at deposition. Those allegations are "blatantly contradicted by the record," *Scott v. Harris*, 550 U.S. 372, 380 (2007), and need not be considered. Moreover, Allen *never* reported the conduct she described during her deposition to Ford, despite her legion of other complaints. Dkt. 81 at ¶ 116. That failure precludes Ford's liability for the conduct as a matter of law. *Yancick*, 653 F.3d at 549 (employer

not liable for "racial harassment 'when a mechanism to report the harassment exists, but the victim fails to utilize it'" (quoting *Durkin v. City of Chi.*, 341 F.3d 606, 612-13 (7th Cir. 2003)).

## II. Allen Suffered No Adverse Employment Actions Because Of Her Gender Or Race

"[T]he singular question that matters" to Allen's gender and race discrimination claims is "whether the evidence would permit a reasonable factfinder to conclude" that her race or gender "caused . . . [an] adverse employment action." *Johnson*, 892 F.3d at 894 (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).  The Court should affirm because no reasonable jury could answer that question in Allen's favor.[5]

Allen offers no argument to the contrary.  Instead, she copies the district court's explanation of why her claims fail, cites the *McDonnell Douglas* framework, and asserts she "was discriminated due to her race and gender in view of the evidence." Br. at 25.  As Ford argued below, it is not even clear *which* events Allen attributes to her race, which to her sex, and which (possibly) to both.  Dkt. 80 at 20-22.

*First*, the record contains just one allegation that even *approximates* an adverse employment action, which is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (citation and quotation marks omitted).  In an EEOC Charge, Allen claimed that in

---

[5] At summary judgment, the same standards apply to Allen's Title VII gender discrimination, Title VII race discrimination, and Section 1981 race discrimination claim.  *Mahran*, 12 F.4th at 714.

two instances, she was disciplined more harshly than men and white employees. Dkt. 116 at 9. But Allen's own brief concedes that "her deposition testimony undercuts these claims." *Compare* Br. at 23, *with* Dkt. 116 at 9. In 2012, Allen and a white male employee were both suspended for absenteeism. Dkt. 116 at 9. In 2013, Allen and a Black woman employee were both suspended for being late.

Allen was required to produce evidence she was disciplined *because of* a protected characteristic. *Igasaki v. Illinois Dep't of Fin. & Prof'l. Reg.*, 988 F.3d 948, 958 (7th Cir. 2021). She completely failed to do so. She identified comparators who vitiate any "reasonable inference of discrimination" based on her gender or race. *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012). And she was unable to articulate a clear theory of *what* characteristic contributed to her purported mistreatment, testifying that her race, gender, religion, and complaints were "all tied up" together. Dkt. 81 at ¶ 103. But a plaintiff who "specifically [did not] know what discriminatory reason [the employer] had" is "doom[ed]" at summary judgment. *Igasaki*, 988 F.3d at 958 (internal quotation marks omitted).

*Second*, aside from these two instances of discipline, the rest of the record evidences *no* adverse employment actions, let alone ones attributable to Allen's gender or race. Allen complains of micromanagement, interrupted lunch breaks, and an argument with a male supervisor. *See* Dkt. 116 at 4, 6. But none of these "incident[s] comes close to constituting" the "significant change in employment status" needed to prove an adverse employment action. *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (internal quotation marks omitted). There is no evidence that Allen's gender or race were in any way tied to, let alone *caused*, these issues. *See, e.g.*,

*Paschall*, 28 F.4th at 814 ("not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority" (internal quotation marks omitted)).

Allen also offered a feeble claim that she was denied overtime because of her gender.  Dkt. 116 at 10.  But she offered no *evidence* that she was actually denied any overtime, or that a comparator received that overtime instead.  *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010).  Even drawing inferences in Allen's favor, the Court "will not simply accept [Allen]'s assumptions as true absent at least some corroborating evidence."  *Id.* at 1003.  Allen offered none, so this claim also fails.

## III.  Allen's Claim Is That She Suffered Slights, Not Retaliation, And Allen Can Show No Connection Between Them And Her Complaints

The district court correctly rejected Allen's retaliation claim.  Dkt. 116 at 10. Allen cannot convince a reasonable jury that (i) she suffered a materially adverse action, *Porter*, 700 F.3d at 957, or that (ii) her protected activity was the but-for cause of any adverse action, *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 915 (7th Cir. 2022).

Title VII's "anti-retaliation provision does not protect against petty slights, minor annoyances, and bad manners"—only against "materially adverse" actions. *Boss*, 816 F.3d at 918.  The record here contains no evidence that Allen experienced any materially adverse action in retaliation for any of her complaints.  Instead, Allen complains that her complaints led to her being "micromanaged" and told to carry a radio.  Dkt. 116 at 4.  And she offered only inadmissible hearsay in support of her dubious claims that she was "outed" for making complaints.  *Id.* at 10.

Many of Allen's the incidents of "retaliation" that Allen claims amounted to retaliation lack *both* an adverse action *or* protected activity.  For instance, she asserts she was retaliated against when a supervisor asked her why she was on her phone (not an adverse action), and that this question was asked of her because she had complained about a coworker's capri pants (not protected activity under Title VII).  Dkt. 116 at 6.  "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient" at summary judgment.  *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).  And Allen has not "offer[ed] evidence that a retaliatory motive was a 'but-for cause of'" any of the slights she allegedly suffered.  *Lesiv*, 39 F.4th at 915.

In her brief, Allen appears to claim that (i) she made complaints evidencing a reasonable (if ultimately mistaken) belief that the conduct she was complaining about violated Title VII; and (ii) the district court somehow failed to consider these complaints.  Br. at 26 (citing *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994)).  But the district court made no such error.  Dkt. 116.  Allen does not identify the specific complaints to which she is referring, nor does she explain *how* these complaints were connected to any materially adverse action.  Instead, Allen makes assertions—for instance, that she "was treated harshly for her complaints"—without citations, supporting detail, or engagement with the actual reasons the district court rejected her claim.  *Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018).

**IV.    Allen Fails To Address The Preemption Of Her Assault Claim Under The Illinois Workers' Compensation Act**

Ford argued, and the district court agreed, that the Illinois Workers' Compensation Act preempted Allen's common law assault claim. Dkt. 116 at 10. The Act bars Allen from suing Ford for an intentional tort like assault because she cannot show that Ford "commanded or expressly authorized" the conduct she claims constituted an assault. *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir. 2018) (citing *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1226 (Ill. 1990)). Allen failed to respond to this argument in the district court, Dkt. 116 at 11, and thus has waived any response on appeal, *Puffer*, 675 F.3d at 718. Allen now argues that the district court "did not account for the fact that [she] was subjected to egregious behavior." Br. at 26. That is irrelevant to the preemption analysis, so Allen still has failed "to engage the reasons [she] lost" below. *Klein*, 884 F.3d at 757. The Court should therefore affirm the district court's finding that Allen's assault claim is preempted by the Illinois Workers' Compensation Act.

## CONCLUSION

The Court should affirm the district court's grant of summary judgment to Ford on all of Allen's claims.

Dated:  November 29, 2023

/s/ *Katherine V.A. Smith*
Katherine V.A. Smith
*Counsel of Record*

Blaine H. Evanson
Michael A. Jaskiw
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
ksmith@gibsondunn.com

*Counsel for Defendant-Appellee Ford Motor Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume requirement of Circuit Rule 32(c) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 8,070 words, as determined by the word count function of Microsoft Word 2019.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 12-point New Century Schoolbook font.

Dated:  November 29, 2023

<u>/s/ *Katherine V.A. Smith*</u>
Katherine V.A. Smith
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
ksmith@gibsondunn.com

## CIRCUIT RULE 30(d) STATEMENT

Plaintiff-Appellant Helen Allen's appendix did not include a copy of the district court's judgment, and thus did not contain all of the materials Seventh Circuit Rules 30(a) and (b) and Federal Rule of Civil Procedure 30(a) require.  Furthermore, Allen's appendix did not conform to the formatting requirements in Federal Rule of Civil Procedure 30(a).   Appreciating that Allen is *pro se*, undersigned counsel for Defendant-Appellee Ford hereby submits the attached Supplemental Appendix and in doing so, certifies that it contains all of the materials required by Federal Rule of Appellate Procedure 30(a) and Seventh Circuit Rules 30(a) and (b).


Dated:  November 29, 2023

*/s/ Katherine V.A. Smith*
Katherine V.A. Smith
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
ksmith@gibsondunn.com

No. 23-2969

# In the United States Court of Appeals for the Seventh Circuit

---

HELEN ALLEN,

*Plaintiff-Appellant,*

v.

FORD MOTOR COMPANY,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:21-cv-962 – Hon. Mary M. Rowland

---

## SUPPLEMENTAL APPENDIX OF DEFENDANT-APPELLEE FORD MOTOR COMPANY

---

Katherine V.A. Smith
*Counsel of Record*

Blaine H. Evanson
Michael A. Jaskiw
GIBSON, DUNN & CRUTCHER LLP

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
ksmith@gibsondunn.com

*Counsel for Defendant-Appellee Ford Motor Company*

# **TABLE OF CONTENTS**

Page(s)

OPINION [D.C. Dkt. 116] ............................................................. A-1

JUDGMENT [D.C. Dkt. 117] ....................................................... A-12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Helen Allen,

Plaintiff,

v.

Ford Motor Company,

Defendant.

Case No. 21-cv-962

Judge Mary M. Rowland

## ORDER

Plaintiff Helen Allen brings this action against her former employer, Defendant Ford Motor Company (Ford) claiming that it violated federal and state employment statutes prohibiting race and gender discrimination, retaliation as well as state law claims of intentional infliction of emotional distress and assault. For the reasons stated below, Defendant's motion for summary judgment [79] is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the

non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## I.     Local Rule 56.1

In moving for summary judgment, Ford initially argues that Allen failed to comply with Local Rule 56.1. "Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted). This applies as well to a *pro se* litigant. *See Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011); *Clay v. Williams*, No. 17 C 6461, 2020 WL 2836740, at *2 (N.D. Ill. May 31, 2020) (collecting cases).

The Court agrees that Allen's Local Rule 56.1 submissions are improper. First, Allen's response to Ford's 56.1 statement of facts does not properly dispute any of Ford's stated facts. As Ford noted, Allen does not cite to any record evidence to dispute Ford's asserted facts. In some cases, she does not state any reason for disputing a fact. *See* Pl. Resp. at ¶¶ 31, 51, 77, 93, 101, 102 (no reason for disputed fact); *see e.g.*, Pl. Resp. at ¶ 23 ("Dispute – The truce lasted 3 weeks"); *id.* ¶ 32 ("Dispute – Sabotage"). Where "a party merely disagrees with the movant's asserted facts that is inadequate to defeat summary judgment if made without reference to specific supporting material." *SMS Fin. Recovery Servs., LLC v. Canelo*, No. 21-cv-04000, 2023 WL 2161660, at *2 (N.D. Ill. Feb. 22, 2023). As such, the facts in Ford's statement of facts are deemed admitted.

Second, Allen's statement of additional facts is improper. A majority of these facts are not supported by citations to the record. Some of the facts are mere recitations of facts offered by Ford. *See* PSOF at ¶¶ 9 – 15; 21. Some are legal conclusions and others are statements that are not relevant to any of Allen's claims. *Id.*, at ¶¶ 80, 84, 36, 58, 104, 71. Where there are citations to the record, often they cite to what Allen calls "New Evidence". The "New Evidence" includes documents that were previously not produced in the litigation. Dkt. 112 at 3. In addition, Allen does not explain how the New Evidence bears on her current claims against Ford.[1]

---

[1] Allen cites an Illinois Worker's Compensation Commission ("IWCC") arbitration decision that was not produced in discovery. Dkt. 112 at 3. It is not relevant to this litigation as it concerns a different Ford facility, the Sharonville facility. Pl. Ex. Z-19, Dkt. 110. The Court previously denied Allen's request to amend her complaint and include claims from her tenure at the Sharonville facility. Dkt. 62.

Allen submitted 44 exhibits totaling 1,050 pages. Allen does not properly cite to this evidence. *See e.g.*, Pl. Resp. at ¶ 7 ("…New Evidence – Exhibit Z-19"); *id*., at ¶ 13 ("…New Evidence – Larese Deposition). In some cases, she does not cite to any exhibit number, and it is often unclear if the material she cites was filed on the docket. *See e.g.* Pl. Resp. at ¶ 25 ("…Drummer 30B6"); *id*., at ¶ 43("…Drummer 30B6-King, Lawanda). Many of the exhibits are duplicates of each other and in some instances, the same exhibit was submitted by Ford. *See* Dkt. 112 at n.2.

The Court is mindful that Allen is representing herself in this case. Still, Ford provided her with notice of her obligation in opposing summary judgment [84]. And the Court is not obligated to sift through hundreds of pages of documents to try to find potentially relevant evidence and arguments favoring Allen. *See D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) ("the district court's role in deciding the [summary judgment] motion is not to sift through the evidence, pondering the nuances and inconsistencies…"); *United States v. 5443 Suffield Terrace, Skokie, Ill*., 607 F.3d 504, 510 (7th Cir. 2010) ("it was not the district court's job to sift through the record and make [the party's] case for him"). Therefore, in deciding the present motion, the Court deems all the facts in Ford's statement of facts admitted and does not consider Allen's "New Evidence."

## BACKGROUND[2]

### I.    Allen Training and Ford's Anti-Harassment Reporting Procedures

Allen is an African-American Muslim woman. DSOF at ¶ 3. Ford hired Allen in 2000 and she eventually transferred to its Chicago Assembly Plant (CAP) in Chicago, Illinois, where she worked as an hourly plumber/pipefitter from January 23, 2012, until August 4, 2016. *Id.* at ¶¶ 5-6. Allen then transferred to another Ford facility in Ohio, where she a took a medical retirement in August 2020. *Id.* ¶ 7. CAP employed over 4,600 people total and over 1,000 per shift when Allen worked there. DSOF at ¶ 2. A local chapter of the United Auto Workers ("UAW") represented Allen. *Id.* ¶ 14. Throughout Allen's tenure at CAP, Ford had a comprehensive Anti-Harassment Policy. DSOF ¶ 15. The Policy tells employees to "immediately report" alleged harassment to supervisors, local HR representatives (known as Labor Relations for hourly employees), or Ford's antiharassment hotline. *Id.* ¶ 18. Allen was trained on the Policy and understood it, *id.* ¶¶ 20, 116.

### II.    Allen's First Complaints at CAP

---

[2] These facts come from Ford's statement of facts [81]. Defendant's Rule 56.1 statement is at Dkt. 81 ("DSOF"); Plaintiff's Rule 56.1 statement is at Dkt. 113-1 ("PSOF"); Plaintiff's response to Defendant's Rule 56.1 statement is at Dkt. 91 ("Pl. Resp."); Defendant's response to Plaintiff's statement of facts is at Dkt. 113 ("Df. Resp.").

In May 2012, Allen emailed a production manager, claiming that CAP was "dysfunction[al]" and that she "pray[ed] that this plant shuts down, so [she] [could] get a transfer to anywhere." DSOF at ¶ 21. In August 2012, Allen gave a handwritten note to Labor Relations, claiming that she had become a "bulls eye" because of her May 2012 complaint. *Id.* ¶ 22. Allen claimed her superintendent was "very harsh" to her and "micro-manage[d]" her by, among other things, "insisting" that she carry a radio. *Id.* Allen asserted that the superintendent was "discriminating" against her because she was "a black, [M]uslim female that he can't intimidate or sleep with." *Id.* Labor Relations interviewed Allen, who explained the superintendent's "harsh" style was directed at all employees, not just her. *Id.* at ¶ 23. When asked how the superintendent "was discriminating against" her in particular, Allen could not "pinpoint" any specific behavior because, she said, "[i]t's just a feeling that may not be accurate." *Id.* Labor Relations closed the complaint, finding no evidence of discrimination on the basis of race, religion, or gender. *Id.* at ¶ 26.

In April 2013, Allen filed the first of her three Charges with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation and discrimination based on race, color, gender, and religion. DSOF at ¶ 29. She claimed she had been disciplined twice but that "non-Black, light skinned employees" were "not disciplined as severely". *Id.* Allen did not identify who had retaliated against her or for what protected activity. *Id.* She also claimed that she had been denied an unspecified "religious accommodation." *Id.* The Charge did not mention racial or sexual harassment. *Id.*

In July 2013, Allen emailed CAP's Plant Manager, complaining she had been "harassed and retaliated against" because of her "race and religion and [she] [was] sure some other prejudices." DSOF at ¶ 30. She asserted that she had been denied "proper lunches and break," and that when she complained, she became "more of a bulls eye." *Id.* Allen also claimed that she "hear[d] foul language every hour of the day," but provided no examples, and did not state who used the language, whether it was directed at her, or whether it was racial or sexual in nature. *Id.*

Next, in December 2013, Allen emailed CAP's HR Manager, claiming that a male security contractor had "used massive profanity towards" her. DSOF at ¶ 32. When interviewed, Allen conceded the situation arose after she had "made a mistake." *Id.* ¶ 33. Allen had caused a flood by draining CAP's fire protection system without first turning off the water. *Id.* at ¶ 34. The security contractor purportedly told Allen, "if you don't know what the F you're doing, don't touch the MF system." *Id.* at ¶ 33. In response to Allen's email, Ford interviewed several witnesses to the flood, including the security contractor, who denied using any profanity toward Allen. *Id.* at ¶ 34.

## III.   Allen's 2014 Harassment Complaints

On January 15, 2014, Allen gave a statement to Labor Relations, claiming for the first time that she heard "sex talk[]" at CAP "not once a month, [but] once a day." DSOF at ¶ 36. When pressed, Allen made several claims about a male Plant Engineering Manager. *Id*. She alleged that when she told the Plaint Engineering Manager that she had not signed off on work orders, he responded: "What the fuck [do] you want me to do?" *Id*. She claimed she overheard that same engineering manager, on separate occasions, say one employee had a "small weenie" and another "sucks and swallows." *Id*. Allen also alleged that a male hourly carpenter had made a "sexual joke" she could not recall. *Id*. at ¶ 37. Later that day, Allen asked Labor Relations to "pull[]" her complaint as she did not want anyone disciplined based on it. *Id*.

Ford Labor Relations and UAW personnel nonetheless re-interviewed Allen and seven other Ford employees regarding her complaint. DSOF at ¶¶ 39, 43. Allen supplemented her complaint with a "chronology" of all the allegedly offensive language that she had overheard at CAP since 2012. *Id*. at ¶ 40. Allen listed six incidents, all involving unnamed coworkers, in which she had overheard crude sexual remarks over the course of a two-year period (from 2012 through 2013). *Id*. Ultimately, Ford did not corroborate Allen's complaints about the engineering manager and could not identify the unnamed coworkers in Allen's chronology. *Id*. at ¶ 43. Ford did conclude the hourly carpenter had used inappropriate language and suspended him for a month. *Id*. at ¶ 44.

Next, Allen complained in February 2014 about two instances of phallic graffiti at the Plant. DSOF ¶ at 46. When interviewed, Allen said she had actively sought out the graffiti after she overheard a radio call requesting that a painter cover it up. *Id*. at ¶ 48. By the time she arrived, one of the images had been removed. *Id*. Allen asked a coworker to text her a picture of the covered-up graffiti because she "wanted to see it." *Id*. A joint Ford/UAW team investigated and interviewed 10 people (including Allen) but could not identify who placed the graffiti. *Id*. at ¶ 49.

The following month, Allen submitted two complaints the same day about an incident outside a men's bathroom. DSOF at ¶ 63. A joint Ford/UAW team investigated and determined that Allen and her male co-worker had put up a "restroom closed" sign and were waiting outside the bathroom to start repairs once it was empty; she and her co-worker told an approaching male employee not to enter the bathroom, but he did anyway. *Id*. The team found no basis to believe that Allen had been sexually harassed. *Id*. During her interview, Allen claimed for the first time that she was "accidental[ly] flash[ed]" by a supervisor at some point in 2013 when the supervisor had entered a bathroom where she was working, apparently unaware that Allen was there; he then "apologized" to her for this "accident[]." *Id*.

## IV.    Allen's 2014 Retaliation Allegations

In February and March 2014, Allen made a series of claims that she had been "outed" as a complainant. Allen first made a hotline call, alleging that "HR used her name" during an antiharassment training; however, she later withdrew that complaint because she "found out" HR had not actually done so. DSOF at ¶ 50. Allen next alleged that at a UAW meeting, the UAW Chairman had disclosed that the UAW's Civil Rights Committee intended to investigate a complaint Allen had made to the UAW. *Id.* at ¶ 52. Then, Allen alleged that a Labor Affairs Manager had told employees "to be careful" because Allen was preparing to sue Ford. *Id.* at ¶ 60. Allen later testified she never heard this comment, but that others had told her about it secondhand. *Id.*

In May 2014, Allen emailed Labor Relations, complaining about an argument she had with an engineering specialist. DSOF at ¶ 67. The engineering specialist alleged Allen refused an assignment, became confrontational, and walked off the job. *Id.* at ¶ 66. Allen claimed she refused an "unsafe" job and asserted the engineering specialist "seems to have issues with women and minorities." *Id.* at ¶¶ 67–68. When asked why she believed that Allen said: "it's been other women and minorities who had issues" with him, and "I know this . . . because they told me." *Id.* at ¶ 68. The Plant closed this complaint without substantiating it. *Id.* at ¶ 69.

Allen then made several complaints in June and July 2014. DSOF at ¶ 70. Allen complained that a female coworker wore "short [] sleeves and Capri pants" at work. *Id.* A month later, Allen alleged an area manager was "retaliat[ing] against [her]" by asking her why she was using her phone at work. *Id.* at ¶ 71. Allen then went on leave for five months. *Id.* Labor Relations interviewed her upon her return but did not substantiate her complaints about the area manager's retaliation. *Id.* at ¶¶ 72-73.

## V.    Allen's 2015 Complaints and Retaliation Allegations

In March 2015, Labor Relations interviewed Allen after she complained that a team manager was allegedly mistreating two other women. DSOF at ¶ 78. According to Allen, one woman had submitted a complaint about the manager, and another had alleged the manager was wrongly denying her leave. *Id.* Allen also alleged a third woman whom Allen did not know, but had "heard of," was "known for grabbing [men's] private parts." *Id.* Labor Relations informed Allen after it had investigated and closed out the complaints. *Id.* at ¶ 79.

In April 2015, Allen complained about "tension" with a male coworker. DSOF at ¶ 80. Allen said she was experiencing a "hostile work environment" because the coworker "does not want to work with [her]." *Id.* at ¶¶ 80–81. Allen claimed it was "a form of harassment" that the coworker was "allowed to come to work." *Id.* Allen also complained it "fe[lt] like [her] supervisors [were] using forms of retaliation against [her]" because the coworker received overtime opportunities that Allen thought she

deserved. *Id.* at ¶¶ 83–84. Ford investigated and found that the coworker had a different job classification than Allen (and thus, different overtime eligibility). *Id.* at ¶ 86. Ford also reminded Allen she did not have her own work area and needed to share space with others. *Id.* Also in April 2015, Allen made complaints about a female coworker. DSOF at ¶ 87. According to Allen, the coworker had said, "I will fuck a bitch up, male or female," and gestured toward Allen. *Id.* Allen alleged the coworker "is known to grab mens [sic] personal parts," and squeeze men's butts and "hug" them, which Allen did not "agree with." *Id.*

In August, Allen made a hotline call, alleging the same female coworker had told Allen and a male coworker to "get the fuck out" of an area and said to Allen, "fuck you bitch." *Id.* at ¶ 89. Labor Relations investigated, corroborated the incident, and suspended Allen's female coworker. *Id.* at ¶ 93. In 2016, Allen spent just three months working at CAP before transferring to another Ford facility. She made no harassment complaints during that three-month period. *Id.* at ¶ 116.

## VI.    Procedural History

Allen previously joined with other plaintiffs to file suit against Ford in 2014, seeking to certify a putative class of women who claimed to have been subjected to sexual harassment. DSOF at ¶ 8. After the Court denied two class certification attempts, Allen's claims were severed from those of her co-plaintiffs and reassigned to this Court. *Id.* at ¶¶ 10–11.

In this suit Allen's operative complaint [73] contains the following counts: (1) Sexual harassment, gender discrimination and hostile work environment on the basis of sex under Title VII; (2) Retaliation in violation of Title VII; (3) Race discrimination, racial harassment and hostile work environment on the basis of race under Title VII; (4) Race discrimination under 42 U.S.C. § 1981; and (5) Assault.[3]

## ANALYSIS

## I.    Hearsay

Ford first argues that Allen attempts to rely on inadmissible hearsay in opposing summary judgment. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801. "A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). "Hearsay is inadmissible in summary judgment proceedings

---

[3] As Ford points out [80], Allen's intentional infliction of emotional distress claim was dismissed in the previous litigation, *Van*, 14-cv-8708, Dkt. 53, and was included in Allen's complaint for purposes of appeal only, Dkt. 62 at 2. Allen does not contest this in her response. Dkt. 88.

to the same extent that it is inadmissible in a trial." *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998).

Ford argues that Allen's statements supporting her sexual harassment claim such as (1) "everyone knows" one female was "known for grabbing" male workers; (2) another woman was "known to grab [men's] personal parts"; and (3) a supervisor was known to have "several girlfriends in the building," DSOF at ¶¶ 78, 87, 102, are inadmissible hearsay. As for her racial harassment claim, Ford argues that though Allen asserts that she "was repeatedly and frequently referred to as 'black bitch'" and a host of derogatory terms in the workplace, she testified that no one ever called her these terms to her face and she was only aware of these comments from other coworkers. *See* Dkt. 73 at ¶ 62a-f; DSOF at ¶¶ 107–108.

Allen argues that the inappropriate discussions at work were so pervasive that if she complained every time, she would not be able to work. Dkt. 88 at 9. This does not address the problem that she is attempting to rely on inadmissible hearsay. Allen may not rely on hearsay. *See King v. Illinois Dep't of Juv. Just.*, No. 12 C 5450, 2014 WL 1560303, at *3 (N.D. Ill. Apr. 17, 2014) (explaining that "hearsay that cannot serve to create a genuine question of fact on summary judgment."). As such, the Court declines to consider the hearsay statements in determining whether there is a genuine issue of material fact as to any of her claims.

## II.    Sexual and Racial Harassment and Hostile Work Environment

Title VII's antidiscrimination provision makes it "unlawful ... for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To prevail on a hostile work environment claim, Allen must show that "(1) the work environment was objectively and subjectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). "[H]arassment which is 'sufficiently severe or pervasive to alter the conditions of ... employment' is actionable under Title VII." *Porter v. Erie Foods Int'l, Inc.,* 576 F.3d 629, 635 (7th Cir. 2009) (citation omitted).

Allen's harassment and hostile work environment claims are mainly premised on hearsay statements, which as discussed, are inadmissible at this stage. The non-hearsay statements Allen relies on do not show a workplace "with discriminatory intimidation, ridicule and insult, ... sufficiently pervasive to alter the conditions of employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). Though Allen had concerns with the language used amongst employees as well as physical contact such as hugging in the workplace, this does not

amount to severe or pervasive conduct. And importantly, Allen does not allege any sexually or racially harassing conduct or comments directed *towards her*.

As such, Ford is granted summary judgment on Allen's racial and sexual harassment and hostile work environment claims.

## III.    Race and Gender Discrimination

Allen claims that Ford subjected her to adverse actions because of her gender and race in violation of Title VII. Additionally, she alleges race discrimination under Section 1981. Dkt. 73 at 2, 10. This Court uses the same standards in evaluating these claims. *Mahran v. Advoc. Christ Med. Ctr.,* 12 F.4th 708, 714 (7th Cir. 2021) (observing that the "legal standard is the same under" Title VII and Section 1981).

In discrimination cases, "[w]hen a defendant moves for summary judgment, the 'singular question' for the district court is whether the plaintiff has introduced evidence that would 'permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Purtue v. Wisconsin Dep't of Corr.,* 963 F.3d 598, 602 (7th Cir.), reh'g denied (July 31, 2020) (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)).

As discussed, Allen's reliance on hearsay statements will not be considered by the Court. Allen otherwise does not provide evidence to create a factual issue that she was discriminated against on a prohibited ground or suffered a materially adverse employment action.

Allen alleged that she was suspended twice in 2012 for leaving the CAP without permission and once in 2013 for being late. DSOF at ¶¶ 61, 104, 112. Allen asserts other non-Black and male employees were treated less harshly. However, her deposition testimony undercuts these claims. As for the 2012 suspensions, Allen testified she was suspended alongside a white male coworker. DSOF at ¶ 112; Def. Ex. B-2 at 29:10-23. Regarding the reprimand based on tardiness, Allen testifies that she and another Black woman were disciplined but the discipline was not removed from her record because she was Muslim and not because of her race or sex. DSOF at ¶ 61. This is a bias based on religion (not at issue in this case) not race.

Allen also alleges that she suffered an adverse employment action when she was asked to carry a radio, micromanaged and denied lunch breaks. DSOF at ¶¶ 22, 24, 27–29. These actions do not rise to the level of a materially adverse employment action. *See Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (materially adverse employment action is one where the plaintiff suffers "a significant change in employment status.").

Finally, regarding Allen's claim that she was denied overtime, Allen must show that "she applied for the overtime work, that she was qualified to do the overtime work, [and] that the overtime was given to people in the same job position." *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010). Allen does not provide any evidence that she was denied overtime due to her gender. For this reason, Ford is granted summary judgment on Allen's race and gender discrimination claims.

## IV.   Retaliation

"Title VII forbids retaliating against an employee 'because [she] has opposed any practice made ... unlawful ... by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Collins v. American Red Cross*, 715 F.3d 994, 998 (7th Cir.2013) (quoting 42 U.S.C. § 2000e–3(a)). To survive summary judgment on a Title VII retaliation claim under the direct method of proof, a plaintiff must submit evidence from which a jury could reasonably conclude that (1) [she] engaged in statutorily protected activity; (2) [she] suffered a material adverse action; and (3) a causal link between the two. *See Porter v. City of Chi.*, 700 F.3d 944, 957 (7th Cir.2012). Title VII retaliation claims "require traditional but-for causation, not a lesser 'motivating factor' standard of causation." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir.2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013)). *See also Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014).

Allen's retaliation claim fails because she fails to identify a materially adverse action or that any action by Ford was causally linked to her complaints. Allen's contention that she was outed as a complainer by the Labor Affairs Manager and UAW Chairman is supported only by hearsay statements. Allen's response to Ford's arguments regarding her retaliation claim are otherwise undeveloped. *See Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 925 (7th Cir. 2019) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered). Therefore, Ford is granted summary judgment on this claim (Count 2).

## V.   Assault

Finally, the Court agrees with Ford that the assault claim is preempted. The Illinois Workers' Compensation Act preempts the assault claim because the Act bars employees from "suing an employer for a co-employee's intentional torts when the employer 'did not direct or expressly authorize the employee to commit' the intentional tort." *Carroll v. YMCA of Metro Chicago, LLC*, No. 13-cv-9307, 2015 WL 149024 at *4 (N.D. Ill. Jan. 9, 2015) (quoting *Meerbrey v. Marshall Field & Co. Inc.*, 564 N.E.2d 1222, 1226 (Ill. 1990).

Allen has failed to respond to Ford's argument on this issue, waiving any response. *See Rozumalski*, 937 F.3d at 925. Allen's contention that she sought worker's compensation for the alleged assault is not relevant and does not create an issue of fact that Ford is liable for assault. Summary judgment is granted to Ford on this claim as well.

## CONCLUSION

For the stated reasons, Defendant's motion for summary judgment [79] is granted. The Clerk is directed to enter judgment in Defendant's favor and against Plaintiff and terminate the case.

E N T E R :

Dated: September 8, 2023

_____
MARY M. ROWLAND
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

Helen Allen,

Plaintiff,

v.

Ford Motor Company,

Defendant.

Case No.  21-cv-962
Judge Mary M. Rowland

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐  in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

which ☐ includes          pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒  in favor of Defendant Ford Motor Company, and against Plaintiff Helen Allen.

Defendant(s) shall recover costs from plaintiff(s).

---

☐  other

---

This action was *(check one)*:

☐ tried by a jury with Judge        presiding, and the jury has rendered a verdict.
☐ tried by Judge  without a jury and the above decision was reached.
☒ decided by Judge Mary M. Rowland on a motion for summary judgment.

Thomas G. Bruton, Clerk of Court
Date: 9/8/2023                    Brenda Rinozzi , Deputy Clerk

## CERTIFICATE OF SERVICE
## WHEN NOT ALL CASE PARTICIPANTS ARE CM/ECF PARTICIPANTS

I hereby certify that on November 29, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that *pro se* Plaintiff-Appellant Helen Allen is not a CM/ECF user. I have dispatched the foregoing document to a third-party commercial carrier for delivery to her within three calendar days.

/s/ *Katherine V.A. Smith*
Katherine V.A. Smith
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
ksmith@gibsondunn.com